Robert G. Regan Co., a Corporation, Plaintiff-Appellee, v. Caesar A. Fiocchi and Charles Fiocchi, Copartners, d/b/a Caesar Fiocchi Company, and Seaboard Surety Company, a Corporation, Defendants-Appellants.

Gen. No. 11,771.

Second District, First Division.

December 6, 1963.

Rehearing denied December 30, 1963.

Runyard, Behanna, Conzelman & Lewis, all of Waukegan, and Goldberg, Levinson, Komie & Friedman, all of Chicago (Murray Conzelman, William Levinson and Lowell B. Komie, of counsel), for appellants.

Snyder, Clarke, Dalziel, Holmquist & Johnson, all of Waukegan (Alfred W. Lewis, of counsel), for appellee.

McNEAL, J.

The plaintiff, Robert G. Regan Co., was the general contractor for the construction of certain buildings for Glenview Naval Homes, Inc. Plaintiff entered into a subcontract with the defendants, Caesar A. Fiocchi and Charles Fiocchi, to do all masonry work in accordance with the plans and specifications of the contract. Plaintiff sued defendants for their failure and neglect to conform strictly with such plans and specifications, and also sued the Seaboard Surety Company as surety for the faithful performance of the subcontract. At the close of plaintiff's evidence, the Circuit Court of Lake County denied certain offers of proof by defendants, and then directed the jury to return a verdict against defendants for $11,296.15. The court entered judgment on the directed verdict, and defendants appealed.

The general contract was for construction of a number of buildings at the Glenview Naval Air Station, known as the Johnson Court-Wherry Housing Development. The project was financed by FHA insured financing under Title VIII of the National Housing Act, as amended, and known as FHA Project No. 07180009. On November 21, 1955, the defendant partners made a subcontract with the plaintiff corporation to perform all masonry work under the prime contract per plans and specifications for $113,000. A portion of the prime contract relating to masonry construction of exterior walls provided:

> "Brick veneer facing on wood frames shall be at least 3½ inches thick, laid on running bond except where stacked bond is shown, and securely attached to the structure with corrosion resistant ties spaced not farther apart than 16 inches vertically and 16 inches horizontally."

337

The subcontract referred to the plans and specifications and recited that the subcontractor had examined them and knew the contents thereof. By the subcontract defendants agreed to conform strictly with all the terms and conditions of the plans and specifications in the performance of the subcontract, and agreed to replace, upon demand of contractor and at subcontractor's expense, with proper materials, any materials determined by contractor or owner to be unsatisfactory within one year from the date of final completion of the prime contract and the final inspection and approval of FHA. Subcontractor also agreed to indemnify and save the contractor harmless from any and all claims, damages or liabilities of whatever nature which might result from performance of the subcontract, and agreed that in the event of the subcontractor's default in the performance of the subcontract in any respect as required by contractor, the contractor might perform the work and furnish materials therefor, or might have other parties do the same, and the subcontractor agreed to pay any excess in cost over the subcontract agreed price for completion by the contractor. The subcontractor also guaranteed to remove and remedy any defects arising within one year of the completion of the project, and agreed that payment should not constitute acceptance of any improper work or performance.

The subcontractor also agreed to comply with all regulations and requirements of the FHA. Among these requirements were provisions that the FHA shall have the right to interpret the contract documents and to determine compliance therewith; that all items of construction shall be subject to final acceptance by the FHA; and that the contractor shall acceptably correct any defects due to faulty materials or workmanship which appear within a period of one year following substantial completion.

338

The subcontractor was paid in full upon the first inspection by FHA, but within the one-year period the inspector determined that the wall ties were not attached as required by the specifications and the brick walls on many of the buildings constructed by defendants commenced to bulge. The inspector notified the owner, Glenview Naval Homes, to correct the condition by installing the ties according to specifications. Thereupon the owner called upon plaintiff to correct the condition and in turn plaintiff directed the defendant subcontractor to install the ties.

It was admitted in defendants' answer and established by the evidence that defendants did not comply with the provision of the prime contract requiring brick veneer to be securely attached to the structure with corrosion resistant ties spaced not farther apart than 16 inches vertically and 16 inches horizontally. According to the evidence, on many buildings the wall ties were 4 foot on center instead of 16 inches, and there was no place on any of the 16 buildings where wall ties were found to be in place 16 inches vertically and horizontally.

It was stipulated that the FHA inspector prepared a report after his inspection of the work and sent the report to Glenview Naval Homes, Inc., that in the report the inspector stated that the brick would have to be taken down and the ties would have to be put in according to specifications and the brick put back up to satisfy the FHA on the project, and that the report was forwarded by Glenview Naval Homes, Inc. to the plaintiff and subsequently by the plaintiff to the defendants. It was further stipulated that a series of letters went from the plaintiff to the defendants notifying them of the absence of wall ties, demanding that defendants do the work, stating that the owner and Glenview Naval Homes demanded that the ties be installed, and notifying defendants that if

339

they did not do the work plaintiff would be forced to do the work itself, and in that event plaintiff would charge defendants for the expense entailed in so doing; that the demand made was to take off the brick, install the ties and put the brick back up; and that all this was done prior to the commencement of any work by the plaintiff company.

Defendants refused to remove the bricks and remedy the omission of wall ties. Thereafter plaintiff removed the brick, installed the ties to the satisfaction of the FHA and replaced the brick. According to uncontradicted evidence in the record it cost plaintiff $11,296.15 to remedy defendants' faulty work. Defendants refused to pay for this additional expense and plaintiff commenced this action.

During the trial counsel for defendants made an offer to prove by one of the defendants that he estimated the cost of taking the buckled brick off, placing wall ties 16 inches on center, and rebricking where brick had been removed, at $6000. Defendants' counsel also offered to prove by an architectural engineer and a contractor that in their opinions the walls would have bulged whether the provisions of the contract as to wall ties had been strictly complied with or not. Objections to these offers of proof on the grounds that the estimate and opinions were immaterial were sustained, and the offers denied. Defendants offered no further evidence and the court directed a verdict for the amount of the judgment entered against them. Defendants' motion for a new trial was denied, and this appeal followed.

■ ■ Contractors have no right to depart from working plans made a part of the contract. If they do so, it is at their peril, and they become guarantors as to the strength and safety of the structures. The parties were clearly entitled to contract to have the build-

ings erected in accordance with certain plans and specifications. An express contract admits of no departure from its terms, and the subcontractors could discharge themselves from liability only by constructing the buildings in accordance with the plans and specifications, unless a deviation was mutually agreed upon. Clark et al. v. Pope et al., 70 Ill 128, 132. Where the parties to a building contract agree that an architect shall pass upon the work and certify as to the payments to be made, his decision is binding and can only be attacked for fraud or evident mistake. Hennessy v. Metzger, 152 Ill 505, 515, 38 NE 1058. When a subcontract provides that the commissioner of public works is to decide all questions as to the proper performance of the work, the determination of the commissioner is binding on the subcontractor and can only be avoided by showing that the commissioner acted unreasonably, arbitrarily or fraudulently, and the onus of showing such facts is upon the subcontractor. Brownell Improvement Co. v. Critchfield, 197 Ill 61, 71, 64 NE 332.

In the instant case defendants agreed to conform strictly with all the terms and conditions of the plans and specifications in the performance of the subcontract, and to comply with the FHA's regulations and requirements, including the FHA's interpretation of contract documents and determination of compliance therewith, and including a provision that all items of construction were subject to final acceptance by FHA. Defendants made no attempt to show that the FHA's decision or determination that the wall ties should have been installed in accordance with the specifications was unreasonable, arbitrary or fraudulent, nor even any attempt to explain why the wall ties were not so installed in the first place. Consequently defendants were bound by the decision and de-

termination of the FHA that the brick would have to be taken down, the wall ties put in according to specifications, and the brick relaid.

Under the authorities cited above this contract admitted of no departure from its terms, and defendants were able to discharge their liability only by constructing the buildings strictly in accordance with the terms and conditions of the plans and specifications. Whether or not one of the defendants estimated that the cost of removing the brick, installing the wall ties in accordance with specifications, and replacing the brick as required by FHA, would amount to $6000 instead of $11,296.15, was entirely immaterial. Likewise, opinions that the walls would have bulged even though the wall ties had been installed or that the walls were stronger without the ties, were also wholly immaterial. Here the contract required strict conformance with a specification that the brick veneer be securely attached to the main structure with corrosion resistant ties installed 16 inches apart. When defendant departed from this specification they did so at their peril, and all attempted excuses for noncompliance became immaterial. The trial court properly denied defendants' offers of proof.

Defendants' deviations from the specification were not with plaintiff's consent. On the contrary, the record is replete with requests and demands for compliance with the specification and replacement of the faulty work. Although not abstracted, the record includes photographs showing that the brick veneer in many places bulged about two inches away from the main structures. Innumerable invoices, payrolls and other exhibits are included in the record and show in detail the amounts expended by plaintiff to comply with FHA requirements relative to the wall ties specified. The trial judge limited such amounts to

342

necessary expenses and carefully eliminated items of profit and overhead expense.

In our opinion the judgment of the Circuit Court of Lake County must be, and the same is hereby affirmed.

Affirmed.

DOVE and SMITH, JJ., concur.