R.W. DUNTEMAN COMPANY, Plaintiff-Appellee and Cross-Appellant, v. THE VILLAGE OF LOMBARD, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—95—0328

Opinion filed May 24, 1996.

Richard T. Wimmer, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant.

Bradley B. Falkof and James A. Reiman, both of Barnes & Thornburg, of Chicago, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, the Village of Lombard (Village), appeals from a judgment entered by the circuit court of Du Page County awarding $111,845 to plaintiff, R.W. Dunteman Co. (Dunteman). Dunteman cross-appeals from the denial of its request for prejudgment interest. We affirm in part and reverse in part and remand.

By way of background, the parties had entered into a construction contract, the terms of which provided that Dunteman would remove and replace a section of roadway located within the Village. A dispute arose as to whether certain work performed by Dunteman was to be compensated at the "pavement removal" rate provided in the contract or at the "special excavation" rate, which was the lower of the two rates. The engineer in charge of the work determined that the "special excavation" rate applied, which decision prompted the instant suit.

Dunteman filed a single-count complaint for declaratory judgment. After the Village answered the complaint, Dunteman moved for summary judgment. Judge S. Keith Lewis granted the motion and made the following findings:

"A. A valid and binding contract existed between the parties which is certain in its terms and unambiguous with respect to the work required by [Dunteman].

B. All work in the nature of—removing and disposing of all existing structures, base, and stabilized sub-base, including resurfaced pavement by this Declaratory Judgment order is classified as 'Pavement Removal' and not 'Special Excavation.'

C. [Dunteman] performed certain work, in an undetermined quantity, in the nature of Pavement Removal and shall be paid according to the contract at the unit price set forth therein for that amount of material removal classified as 'Pavement Removal.' "

The order further provided that Dunteman was to submit a statement to the Village setting forth the quantity of material it removed that was classified as "pavement removal" under the terms of Judge Lewis' order. The Village was to respond with any objection to the said quantity and the basis for the objection.

Dunteman then served upon the Village a request to admit facts. Dunteman also filed an amended complaint. Count I sought a declaratory judgment as to classification of the work performed. Count II alleged a breach of contract and sought damages based upon the Village's failure to pay Dunteman for the removal of the "pavement structures."

In its response to the request to admit facts, the Village admitted that Dunteman removed the entire surface area of the "Work Area." The Village admitted that there may have been as much as 16,930 square yards of surface area. The Village further admitted that Dunteman removed pavement structures, base, and stabilized sub-base, including resurfaced pavement.

A bench trial was held before Judge Bonnie M. Wheaton. Following the trial, Judge Wheaton made the following findings: that the determination of the engineer as to the payment rate was not binding upon the parties; that the contract price for pavement removal was $10 per square yard; that 16,525 square yards of pavement were removed from the work area; and that Dunteman was entitled to be paid for the removal of the specified surface area, that being 16,525 square yards, at the rate of $10 per square yard.

After subtracting the amounts previously paid by the Village, judgment was entered for Dunteman in the amount of $111,845. Judge Wheaton denied Dunteman's request for prejudgment interest.

This appeal and cross-appeal followed.

The Village contends, first, that Judge Wheaton erred in determining that the engineer's decision as to the payment rate was

not binding on the parties in this case. Dunteman responds that engineering decisions made pursuant to contract provisions similar to the one at issue in the present case are always subject to judicial review and scrutiny.

■ It is not disputed that article 105.01 of the Standard Specifications for Road and Bridge Construction, Illinois Department of Transportation, adopted July 1, 1988 (Standard Specifications), was incorporated into the contract at issue in the present case. Article 105.01 provides as follows:

> "**Authority of Engineer.** All work shall be done under the supervision of the Engineer and to the Engineer's satisfaction. The Engineer shall decide all questions which arise as to the quality and acceptability of materials furnished, work performed, manner of performance, rate of progress of the work, interpretation of the plans and Specifications, acceptable fulfillment of the contract, compensation, and disputes and mutual rights between Contractors under the Specifications. The Engineer shall determine the amount and quality of work performed and materials furnished. The Engineer's decision shall be final and shall be a condition precedent to the right of the Contractor to receive money due the Contractor under the contract." Standard Specifications, art. 105.01 (1988).

Illinois courts have consistently enforced similar contract provisions making decisions of the engineers or architects final on matters that were so intended by the parties to the contract. See *Weld v. First National Bank*, 255 Ill. 43 (1912); *Arnold v. Bournique*, 144 Ill. 132 (1893); *Herlihy Mid-Continent Co. v. City of Chicago*, 331 Ill. App. 78 (1947); *Jobst v. City of Danville*, 212 Ill. App. 571 (1918). However, Illinois courts do not recognize the engineer's decision as binding in all circumstances. Rather, the engineer's decisions or determinations are considered final and legally binding except where his actions or failure to act were fraudulent, collusive, unreasonable, made in bad faith, or contained evident mistake. See *Mellon Stuart Construction, Inc. v. Metropolitan Water Reclamation District of Greater Chicago*, No. 93—C—6241 (N.D. Ill. April 21, 1995) (and the cases cited therein).

■ We believe that the record in this case demonstrates a clear mistake by the engineer when he determined that the "special excavation" rate and not the "pavement removal" rate applied to Dunteman's removal work.

The contract at issue here provides that special excavation "shall be performed in accordance with the requirements of Section 205 of the Standard Specifications." Section 205 provides in pertinent part as follows:

"205.01 **Description.** Special excavation shall consist of the removal of all existing structures defined herein; earth excavation and borrow excavation; the placement of all suitable excavated materials in the subgrade, or embankment, or as replacement.

\* \* \*

205.02 **Definition of Structures.** For the purpose of this section of the Specifications, structures shall be interpreted to mean all types of pavement surfaces (including base and surface courses), curbs, gutters, combination curb and gutters, sidewalks, driveways, concrete or masonry walls or foundations, underground drainage, street car rails, ties and ballast and all other existing structures of a similar nature, the removal of which is called for on the plans or required in the execution of work included in the contract." Standard Specifications, arts. 205.01, 205.02 (1988).

The above definition of "special excavation" indicates that it is a general term which includes pavement removal, as well as other types of excavation. Pavement removal is defined in article 617.01 of the Standard Specifications as follows:

"This work will consist of the removal of and satisfactory disposal of all existing pavement, base, stabilized sub-base, including resurfaced pavement, curb, gutter, combination curb and gutter, driveway pavement and sidewalk; the removal of bituminous surfaces in preparation for subsequent resurfacing or the texturing of existing pavement surfaces." Standard Specifications, art. 617.01 (1988).

Article 617.06 of the Standard Specifications provides as follows:

"**Basis of Payment.** \*\*\* When a separate payment item is included in the contract and quantities are shown on the plans, PAVEMENT REMOVAL, and DRIVEWAY PAVEMENT REMOVAL will be paid for at the contract unit prices per square yard; CURB REMOVAL, GUTTER REMOVAL, and COMBINATION CURB AND GUTTER REMOVAL, per lineal foot; and SIDEWALK REMOVAL per square foot, all measured as specified herein. When quantities are shown on the plans, but no separate payment item is included in the contract, Pavement Removal, Driveway Pavement Removal, Curb Removal, Gutter Removal, Combination Curb and Gutter Removal, and Sidewalk Removal shall be considered as incidental to the contract, and payment for these items shall be included in the contract unit price for Earth Excavation." Standard Specifications, art. 617.06 (1988).

Article II of the Standard Specifications is entitled "Earthworks." The definition of "special excavation" is contained in article II, thus making it a type of earth excavation. Under our reading of article 617.06, "pavement removal" is to be paid at the "special excavation"

rate unless a separate pay item is included in the contract for pavement removal, and quantities of pavement removal are shown on the plans and specifications, in which case pavement removal is to be paid at the "pavement removal" rate and not the "special excavation" rate.

It is undisputed that the contract here contains a separate pay item for pavement removal and that the plans and specifications show the quantities of pavement removal. Therefore, the engineer was clearly mistaken when he ordered the work performed paid for at the "special excavation" rate.

■ Next, the Village contends that, even if the engineer's decision was subject to review, Judge Wheaton's decision was against the manifest weight of the evidence. The Village argues that the trial court's decision that the materials removed by Dunteman pursuant to the contract constituted pavement removal under article 617.02 of the Standard Specifications was contrary to both the engineer's decision and the expert testimony at trial.

The Village's expert witness, Irving Benjamin, testified that, based upon his review of the contract documents, the deposition testimony, his understanding of the facts of the case, and his expertise in road and highway design, in his opinion, the amount of materials to be categorized as pavement removal was designated on the plans, which indicated 330 square yards. He further opined that as to special excavation there were 8,113 cubic yards of material to be removed for type I special excavation and 9,724 for type II special excavation.

Mr. Benjamin further testified that special excavation includes any material that might be found along a roadway path: asphalt surface and binder courses, concrete base course, sub-base and gravel material. It could include curb and gutter. It was basically different materials all conglomerized in one specific item. Earth excavation could be included in special excavation. Pavement removal can be a part of special excavation, but special excavation cannot be a part of pavement removal.

On cross-examination, Mr. Benjamin testified that the contract here was a unit-priced contract, meaning the summation of individual prices for different components in the contract extended out by virtue of the amount needed and then totalled up. With respect to the earth pavement, base or sub-base or special excavation, those were all estimates and could be revised upwards or downwards depending upon what was found at the actual jobsite or other conditions on the jobsite.

Mr. Benjamin's testimony supports the conclusion we previously

reached that the materials removed by special excavation or by pavement removal are of the same type. It is the basis of payment that distinguishes between the two in this case as we have previously stated.

■ The Village also contends that the trial court erred in finding the contract to be ambiguous. We disagree.

A contract is ambiguous if it is subject to more than one reasonable interpretation. The existence of an ambiguity in a contract must be determined as a matter of law by the court. *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 493 (1993). Where ambiguities exist in a contract between two provisions, the more specific controls over the more general provision. *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 99 (1993).

The Village argues that Judge Wheaton's finding of ambiguity was based upon "faulty, non-existent premises," to wit, that the Standard Specifications were drafted by the Village and that the contract was incapable of clear understanding. The Village's argument is without merit.

Judge Wheaton properly found that an ambiguity existed between the special excavation provisions and the pavement removal provisions, both of which covered the same type of material. Judge Wheaton then correctly concluded that the specific provisions governing the rate of pay found in article 617.06 controlled. Curiously enough, it was the Village that urged that the contract was ambiguous in response to Dunteman's motion for summary judgment before Judge Lewis and sought an evidentiary hearing, which it received before Judge Wheaton.

The Village also contends that Judge Wheaton's order did not consider the intent of the parties, given the great discrepancy between the 330 square feet of pavement removal estimated in the contract and the 16,525 square feet Judge Wheaton found had been removed.

The primary objective in construing a contract is to effectuate the parties' intentions when entering into the agreement. *Bunge Corp.*, 252 Ill. App. 3d at 493. The Village argues that, since the engineer's final determination of the amounts excavated from the jobsite was almost identical to the original plan estimates, the parties must have intended for the bulk of the road work to be paid at the "special excavation" rate.

We agree with Dunteman that the intent of the parties cannot be gleaned from the contract in this case. The testimony at trial established that the quantities listed were estimates only, subject to being increased or decreased. Specifically, there was testimony from

Alan Dunteman, president of R.W. Dunteman Co., that at least 40 changes were made in the quantities on this particular project. Further, Mr. Benjamin testified that changes in quantities could result from conditions found on the jobsite.

■ Finally, the Village contends that Dunteman is not entitled to the higher "pavement removal" rate because, had it inspected the plans and examined the site, as provided in the contract, it would have discovered the conditions that led it to seeking the "pavement removal" rate rather than the "special excavation" rate. Specifically, the Village argues that it did not guarantee the accuracy of the plans at the time the work was put out for bids. Moreover, since Dunteman should have known through inspection the conditions of the jobsite, Dunteman cannot now complain about what it found.

Dunteman responds that the Village misunderstands the basis of Dunteman's claim. Dunteman does not claim that it was injured by the inaccuracy of the plans in this case. It is undisputed that this is a unit-priced contract, not a lump sum one, and the quantities listed were subject to change. The payment for work completed was based on actual quantities excavated. Thus, the cases relied on by the Village are distinguishable. Cf. DeVito v. Village of Elburn, 37 Ill. App. 2d 59 (1962); see also Brown Brothers, Inc. v. Metropolitan Government of Nashville & Davidson County, 877 S.W.2d 745 (Tenn. App. 1993).

The Village argues that the decision in this case undermines the bidding process by allowing a contractor to win a contract by submitting a low bid, "relying on persuasive arguments after the work was completed that the work was different than they had anticipated, more costly to complete or fell into a higher pay category."

The above scenario is not present in the cause before us. The basis of Dunteman's claim is that it should be paid the "payment removal" rate for materials it removed that fall under the contract definition of pavement removal materials. The fact that the contract the parties entered into provides for unit price and estimates, rather than fixed quantities, indicates that the amount and type of material to be removed were subject to adjustment based upon conditions found at the jobsite. Thus, any failure on Dunteman's part to inspect the plans or the jobsite is immaterial to whether it was entitled to the "pavement removal" rate rather than the "special excavation" rate.

In summary, we conclude that the trial court did not err in determining that, under the facts of this case, the engineer's decision was reviewable and that the award to Dunteman was not against the manifest weight of the evidence.

We now turn to the issue raised in the cross-appeal.

In denying Dunteman's request for prejudgment interest, Judge Wheaton stated as follows:

"I don't believe that the sum at issue here is actually readily ascertainable or liquidated. There was never any question that the work was done, but I think that the argument put forth by the Village was certainly a good faith argument and was not interposed for purposes of delay or vexatious refusal to pay.

I don't think that the fact that ultimately a [sic] trial, the defendants conceded that that much pavement was actually removed necessitates a finding this was a liquidated sum.

I don't believe that this case is appropriate for the award of prejudgment interest, so I have entered the final award."

■ Section 2 of the Interest Act (Act) (815 ILCS 205/2 (West 1992)) provides that "[c]reditors shall be allowed to receive [interest on] all moneys after they become due on any *** instrument of writing."

A building or construction contract is an instrument in writing within the meaning of the Act. *E.M. Melhan Construction Co. v. Village of Carpentersville*, 100 Ill. App. 3d 544, 550 (1981). The Village concedes that the existence of a good-faith dispute and the unreasonableness of any delay in payment only affects that portion of section 2 of the Act which relates to unreasonable or vexatious delay and has no applicability to cases involving instruments in writing. *E.M. Melhan Construction Co.*, 100 Ill. App. 3d at 550. Nevertheless, the Village argues that Judge Wheaton correctly found that the sum at issue was not readily ascertainable or liquidated.

The decision of the trial court on whether prejudgment interest should be awarded will not be reversed on appeal unless it is against the manifest weight of the evidence. *Oldenburg v. Hagemann*, 207 Ill. App. 3d 315, 327 (1991).

■ In the cause before us, once the determination was made as to what materials were to be compensated under the "pavement removal" rate, it required only a simple mathematical computation to determine the sum owed to Dunteman. The Village's reliance on *Oldenburg* is misplaced. In that case, this court upheld the denial of prejudgment interest where the determination of the amount of interest involved a multitude of calculations, including taking into consideration the original bid, its reduction, a credit owed, modifications of the amount due to change orders, and amounts paid to the defendant as well as to other contractors. See *Oldenburg*, 207 Ill. App. 3d at 327-28.

We conclude that the decision of the trial court denying prejudgment interest to Dunteman is against the manifest weight of the evi-

dence. Therefore, this portion of the judgment must be reversed, and this cause is remanded for a hearing to determine the amount of prejudgment interest to be awarded to Dunteman.

The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

DOYLE and HUTCHINSON, JJ., concur.