In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-1679

BEM I, L.L.C.,

*Plaintiff-Appellant,*

v.

ANTHROPOLOGIE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 98 C 358—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED APRIL 2, 2002—DECIDED AUGUST 20, 2002

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Anthropologie, a chain of pricey retail clothing stores, wanted to open a store in the wealthy Chicago suburb of Highland Park. So in 1996 it leased 13,000 square feet in a building, owned by BEM, that was under construction. The lease was to run for 10 years, at an annual rental of almost a quarter of a million dollars. Under the terms of the lease, Anthropologie's obligation to pay rent did not arise until 90 days after "substantial completion," defined as the date of completion of the landlord's work, pursuant to the lease, in making the premises fit for occupancy, "all as certified by the Landlord's Architect." The architect certified the work as com-

plete on June 20, 1997, but in fact the work was not complete until August 19, and Anthropologie could not occupy the premises during this period. BEM insisted, nevertheless, that Anthropologie owed it rent from September 18, 90 days after June 20, rather than from 90 days after the actual (as distinct from the architect-certified) date of completion, a difference of some $48,000. BEM sued Anthropologie under Illinois law in an Illinois state court seeking damages in that amount plus an order of eviction. Anthropologie removed the case to federal district court, the parties being of diverse citizenship. Pursuant to a clause in the lease, the judge referred the parties' dispute to a panel of arbitrators, which found in favor of Anthropologie, awarding it more than half a million dollars in damages and attorneys' fees. The judge confirmed the arbitrators' award and so Anthropologie remains in possession under the lease. BEM claims that the removal of the case to federal court was improper, and, alternatively, that the arbitrators' awards were improper and should not have been confirmed.

Removal was proper only if the amount in controversy exceeded $75,000 on the date of removal. *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001); *Journal Publishing Co. v. General Casualty Co.*, 210 F.2d 202, 204-05 (9th Cir. 1954). Before the case was removed, when it was still in state court, BEM had filed a motion to increase its claim for rent from $48,000 to $88,000, but when it discovered that Anthropologie intended to remove the case, it immediately withdrew the motion, which the state court judge had not acted on. It did this because it wanted to prevent removal. Nevertheless it did not object to removal or flag any issue concerning the district court's jurisdiction. Not until 21 months later, after the district judge had on her own initiative raised

the issue, did BEM contend that the requirement of a minimum amount in controversy of $75,000 had not been satisfied.

BEM reminds us that the subject-matter jurisdiction of a federal court may be questioned at any time until the litigation becomes final, and sometimes even later. True; but deliberately to avoid raising the issue is improper, indeed sanctionable, *In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 670 (7th Cir. 2001); *First National Bank v. A.M. Castle & Co. Employee Trust*, 180 F.3d 814, 819 (7th Cir. 1999); *Richmond v. Chater*, 94 F.3d 263, 267 (7th Cir. 1996); *Minority Police Officers Ass'n v. City of South Bend*, 721 F.2d 197, 199 (7th Cir. 1983); *Aves By & Through Aves v. Shah*, 997 F.2d 762, 767 (10th Cir. 1993); *Tuck v. United Services Automobile Ass'n*, 859 F.2d 842, 844-46 and n. 3 (10th Cir. 1988); see *Board of License Commissioners v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam); *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 n. 3 (8th Cir. 1998), and quite possibly unethical. See *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993). As officers of the court, lawyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress; it is precisely to impose a duty of assistance on the bar that lawyers are called "officers of the court." Lawyers also owe it to the judge and the opposing lawyer to avoid subjecting them to the burdens of a lawsuit that they know or think may eventually be set at naught, and have to be started over again in another court, because of a jurisdictional problem of which the judge and the opposing lawyer may be unaware. As reference to such unawareness should make clear, we acknowledge that jurisdictional problems may be overlooked in all innocence. E.g., *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 210-12 (5th Cir. 1998). But BEM's lawyer acknowledged at the

argument before us that he was aware of a jurisdictional problem even before the case was removed; it was that awareness that motivated him to withdraw his motion to increase the amount of damages he was seeking.

What makes BEM's conduct at once egregious and harmless is that its challenge to the district court's subject-matter jurisdiction was frivolous, quite apart from the fact that even while withdrawing its motion for the additional rent it continued to claim that the additional rent was owed it. Illinois practice, like that of the federal courts, does not limit the plaintiff's possible recovery to the amount of damages stated in its complaint, 735 ILCS § 5/2-604; *Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997); see Fed. R. Civ. P. 54(c); *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980)—even if that amount is zero. See *Z Channel Limited Partnership v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991); *Columbia Nastri & Carta Carbone, S/p/A v. Columbia Ribbon & Carbon Mfg. Co.*, 367 F.2d 308, 312 (2d Cir. 1966). And so reducing the ad damnum had no effect on the actual stakes in the case. Had BEM wanted to make sure that its stake was less than $75,000, it should have stipulated to that effect. *Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *In re Shell Oil Co., supra*, 970 F.2d at 356; *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). If Illinois, like some states, had a rule limiting the plaintiff's recovery to the amount asked for in the complaint, that would have the same effect as a stipulation, *Barbers, Hairstyling for Men & Women, Inc. v. Bishop, supra*, 132 F.3d at 1205, and then the plaintiff who asked for less than $75,000 in damages (and no other relief—the importance of this qualification will appear shortly) would prevent removal. But Illinois does not have such a rule.

A further complication is that the additional $40,000 in rent that BEM was seeking was the rent due on January 1, which was several days after the suit was filed, and there are cases (none appellate, however) which are said to hold "that in a suit to recover accrued installments, those payments that become due between the date of filing the state court complaint and the date on which removal is sought cannot be considered." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725, p. 115 (3d ed. 1998). Unless the payor had repudiated his future obligations (and we are given no reason to suppose that Anthropologie was unwilling to pay the January rent, since it had been in occupancy of the leased premises for well over 90 days at that point), the amount would not be in controversy on the date the complaint was filed. But the Wright and Miller treatise is wrong; the relevant date for determining whether the minimum amount in controversy is present is the date of removal, not the date of the original complaint in state court, as *Workman*, *Shell*, and *De Aguilar* make clear. The cases Wright and Miller cite are ones in which the installment was due after removal, not, as the treatise implies, before.

Events subsequent to removal that merely reveal whether the required amount was in dispute on the date of filing, rather than alter the current amount in controversy, can be considered in deciding what that original amount in controversy was. *State Farm Mutual Automobile Ins. Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996); *Watson v. Blankinship*, 20 F.3d 383, 387-88 (10th Cir. 1994); *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 782-86 (2d Cir. 1994). Although Anthropologie did not pay the January rent until January 27, and thus was technically in default when the case was removed, there is no indication that it denied owing the rent or that the delay in pay-

ment was an actual breach of contract rather than being, instead, consistent with trade usage.

The question how much damages BEM was seeking is anyway a red herring, since the jurisdictional minimum in diversity cases is not the amount sought by the plaintiff but the amount at stake to either party to the suit. Not all courts take this view but ours certainly does. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir. 2000); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir. 1997). For illustrative cases in other circuits, see *Justice v. Atchison, Topeka & Santa Fe Ry.*, 927 F.2d 503, 505 (10th Cir. 1991); *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978), and for approval by a leading, if, as we have noted, occasionally mistaken, treatise see 14B Wright, Miller & Cooper, *supra*, § 3703, pp. 121-25. The division of authority is summarized in Brittain Shaw McInnis, Comment, "The $75,000.01 Question: What Is the Value of Injunctive Relief?," 6 *Geo. Mason L. Rev.* 1013, 1021 n. 52 (1998).

It seems to us beyond absurd to allow a defendant to remove if the plaintiff is seeking damages of $75,000.01, but not if the plaintiff is seeking an injunction directing the defendant to tear down, as a nuisance, a $10 million building that the defendant owns. The purpose of a statute is often and here the essential clue to its meaning. The purpose of allowing removal in diversity cases is to enable a nonresident defendant to move the case against him from state to federal court, provided the case is not trivial. What is trivial from the defendant's standpoint—and remember that it is for his benefit that removal is allowed; removal is a privilege of a defendant, not of a plaintiff, whose access to a federal court is by filing his suit in that court—depends on what he may lose in the suit. *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 394 (7th Cir.

1979); 15 *Moore's Federal Practice* § 102.109[3], p. 102-199, § 102.109[4], p. 102-200 (3d ed. 1998); McInnis, *supra*, at 1029-30. Whether his loss will also be the plaintiff's gain is irrelevant.

BEM argues that if this is right, every eviction case is going to be removed to federal court. That is another absurdity, and not only or mainly because most tenants are citizens of the same state as their landlord. Most evictions are not that costly to the tenant, in part because of the tenant's duty to mitigate his damages by seeking alternative premises. See *Bush v. Roadway Express, Inc.*, 152 F. Supp. 2d 1123, 1126 (S.D. Ind. 2001). Most tenants are not tenants of a 13,000 square foot store and do not pay upwards of $20,000 a month in rent or invest hundreds of thousands of dollars, as Anthropologie did, in unrecoverable improvements. (The lease is explicit that any improvements made by Anthropologie are to revert to BEM when the lease ends.) Most tenants do not have 10-year leases and are not successful retail chains that spend more than $75,000 in legal and related costs to negotiate a lease and anticipate hundreds of thousands of dollars of revenues from every month of their occupancy. Unlike the average tenant, Anthropologie incurred a likely loss of hundreds of thousands of dollars in unrecoverable improvements and negotiating costs. And while it is true as BEM points out that it was always possible that if Anthropologie was evicted it would make a still more advantageous lease with someone else—so much more advantageous, conceivably, as to exceed the hundreds of thousands of dollars in lost improvements and negotiating costs—the mere possibility of a windfall that might convert a likely loss into a serendipitous gain is too speculative to affect the determination of the amount in controversy on the date the complaint was filed. Otherwise

the determination of federal jurisdiction in diversity cases would be incredibly complicated.

So the district court did have jurisdiction, and we can proceed to the merits. BEM's argument against the arbitrators' award is very simple, and very wrong. It is that the arbitrators misapplied Illinois law, even though the arbitration clause in the lease is explicit that they were to apply Illinois law. They misapplied it, BEM argues, first when they disregarded the architect's certification that substantial completion of the landlord's work had occurred by June 30, even though they thought the architect not guilty of fraud but merely mistaken and did not pronounce his mistake an *evident* mistake, although under Illinois law fraud and evident mistake are the only grounds for disregarding such a certification; second when they awarded lost profits in the operation of a new store at a new location; and third when they awarded prejudgment interest on those lost profits, though the lost profits were not a liquidated amount, and Illinois law allows an award of prejudgment interest only when the plaintiff is suing for such an amount.

We should distinguish between two types of case in which an arbitral award might be challenged for disregarding the law. In one, although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award. 9 U.S.C. § 10(a)(4); *Northern Indiana Public Service Co. v. United Steelworkers of America*, 243 F.3d 345, 347 (7th Cir. 2001); *AGCO Corp. v. Anglin*, 216 F.3d 589, 596 (7th Cir. 2000); *Brotherhood*

*of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir. 1985); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74 (2d Cir. 1997); *Michigan Mutual Ins. Co. v. Unigard Security Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995). The language that instructed the arbitrators to apply Illinois law ("This lease shall be construed, interpreted and governed by the laws of the State in which the Leased Space is situated") was part of the contract, and if they had refused to follow it this would signify that they were exceeding their authority; for, with immaterial exceptions, arbitrators are authorized only to interpret contracts and not to use their own ideas of justice to decide the parties' dispute. *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62 (2000); *International Truck & Engine Corp. v. United Steel Workers of America, Local 3740*, 294 F.3d 860, 861 (7th Cir. 2002); *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 184-85 (7th Cir. 1985). No interpretation of the contract is imaginable that would have authorized the arbitrators to apply the law of another state instead.

Contrast that with a case in which the arbitrators conscientiously attempt to apply Illinois law, pursuant to the choice of law provision in the contract, but fail to apply it correctly. The loser has no judicial remedy in that case because it is merely a case of legal error, not of *ultra vires*, and there is no judicial review of arbitration awards for legal error. *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645, 650 (7th Cir. 2001); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 581 (7th Cir. 2001); *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir. 1996); *Grammar v. Artists Agency*, 287 F.3d 886, 893 n. 8 (9th Cir. 2002); *Bull HN Information Systems, Inc. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000). BEM argues ingeniously that unless judges correct arbitrators' le-

gal mistakes, contracting parties will shun arbitration and we judges will be overwhelmed with breach of contract suits. Maybe; but against that is the added cost of arbitration if parties can challenge arbitrators' legal errors in court. And while we are discussing arbitrators' incentives, we should point out that arbitrators probably would not write opinions—they are not required to—if their opinions were reviewable for legal errors, which would be concealed if the award consisted simply of a dollar amount. The quality of arbitration would be less, if, as seems plausible, having to articulate one's views in writing is a good discipline—something we judges certainly believe.

The arbitrators wrote a very brief, bare-bones opinion in which they did *not* say they were disregarding Illinois law or, what would amount to the same thing, trying to change it. The parties dutifully argued Illinois cases to them. The issues of Illinois law on which those cases bore were difficult. It's true that Illinois law requires a finding of fraud or evident mistake to justify disregarding an architect's certificate, *Weld v. First National Bank*, 99 N.E. 72, 73-74 (Ill. 1912); *R.W. Dunteman Co. v. Village of Lombard*, 666 N.E.2d 762, 765 (Ill. App. 1996); *Robert G. Regan Co. v. Fiocchi*, 194 N.E.2d 665, 668 (Ill. App. 1963), but it is arguable that the lease in this case required substantial completion *in fact*, with the certification merely back-up protection for the tenant: if the architect did not certify substantial completion, the landlord would not be heard to argue later that actually the premises had been substantially completed. Cf. *In re Oriskany Central School District*, 654 N.E.2d 1208, 1209 (N.Y. 1995); *Steffek v. Wichers*, 507 P.2d 274, 279-81 (Kan. 1973). As for lost profits for a new store, the outer limits of that hoary principle are vague, *MindGames, Inc. v. Western Publishing Co.*, 218 F.3d 652, 656, 657 (7th Cir. 2000), even in Illi-

nois, see *Milex Products, Inc. v. Alra Laboratories, Inc.*, 603 N.E.2d 1226, 1236-37 (Ill. App. 1992), and, bearing in mind that its purpose is merely to limit the speculative element in estimating lost profits, it may be inapplicable to a case such as this, in which the new store is an identical copy of the other stores in a highly successful chain. *DeJong v. Sioux Center, Iowa*, 168 F.3d 1115, 1123 (8th Cir. 1999); *No Ka Oi Corp. v. National 60 Minute Tune, Inc.*, 863 P.2d 79, 82-84 (Wash. App. 1993); see also *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1255-56 (7th Cir. 1994).

As for the award of prejudgment interest in apparent contradiction of the Illinois rule that limits such awards to cases in which the damages are a sum certain or readily calculable (as in a suit for the contract price), *Couch v. State Farm Ins. Co.*, 666 N.E.2d 24, 27-28 (Ill. App. 1996); *Rockford Redi-Mix, Inc. v. Teamsters Local 325*, 551 N.E.2d 1333, 1343 (Ill. App. 1990); *Phelps v. O'Malley*, 511 N.E.2d 974, 978-79 (Ill. App. 1987); *Spagat v. Schak*, 473 N.E.2d 988, 993-94 (Ill. App. 1985), the arbitrators may have thought the choice of law provision in the contract was not intended to displace the *remedial* rules of the American Arbitration Association, which include a rule awarding prejudgment interest whether or not the damages are a sum certain. The Illinois rule is merely a default rule; the parties are free to specify prejudgment interest beyond the rule's scope, 815 ILCS § 205/2; *Continental Casualty Co. v. Commonwealth Edison Co.*, 676 N.E.2d 328, 331 (Ill. App. 1997); *Premier Electrical Construction Co. v. American National Bank of Chicago*, 658 N.E.2d 877, 888 (Ill. App. 1995); and it is arguable that that's what they did when they agreed that any dispute under the lease would be referred to arbitration. *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518, 519-520 (7th Cir. 1999) (applying Illinois law). But we are straying far afield in glancing how-

ever lightly at the merits, for it is of no moment whether the arbitrators got Illinois law right—or very wrong.

Finally, BEM asks us to enter judgment for it on the basis of the arbitrators' finding that the architect's certification of substantial completion as of June 20 was not based on fraud and their implicit finding that it was not based on an evident mistake. (We don't really know whether that was their implicit finding. They didn't say it was an evident mistake, but they may have thought it was and used that as the premise for their conclusion that substantial completion did not occur until August 19.) That finding, BEM argues, compels the conclusion that Anthropologie's obligation to pay rent commenced 90 days after June 20. Not so, for the reason we stated earlier and for another as well. At most, BEM has identified a contradiction in the arbitrators' opinion, which, if it created a serious doubt as to the arbitrators' bottom line, would be a basis for a remand to the arbitrators. 9 U.S.C. 10(a)(4); *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*, *supra*, 266 F.3d at 651; *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1019-20 (7th Cir. 2000); *Colonial Penn Ins. Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 334-35 (3d Cir. 1991); *United Steelworkers of America, Local 4839 v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 968 (6th Cir. 1990). But BEM does not seek a remand; and anyway there is no doubt what relief the arbitrators ordered and, that being so, any inconsistencies in their reasoning are merely errors of law or fact, neither of which is a basis for setting aside the award.

AFFIRMED.

No. 01-1679                                                           13

A true Copy:

     Teste:

                                     _____

                                    *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*