In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3134

MICROMETL CORP.,

*Plaintiff-Appellee,*

*v.*

TRANZACT TECHNOLOGIES, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3257—**Nan R. Nolan**, *Magistrate Judge.*

ARGUED MARCH 30, 2011—DECIDED AUGUST 24, 2011

Before FLAUM, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* After Micrometl Corp. filed suit
in state court against Tranzact Technologies, Inc., alleging
overbillings in excess of $100,000, Tranzact removed to
federal court. The parties are of diverse citizenship, and so
jurisdiction appeared secure. Over a year and a half
after the lawsuit commenced, however, Micrometl pro-
duced a document showing that its damages were
really, so it seemed, less than $40,000. Tranzact believed

that the document conclusively established that the amount in controversy had never exceeded $75,000, and if that was true, then the district court lacked subject-matter jurisdiction under 28 U.S.C. § 1332. Inexplicably, Tranzact waited ten months, until after a settlement conference failed to resolve the underlying dispute, to alert the court about this problem. Only then did it file a motion to remand the case to state court, along with a request for attorneys' fees and costs. See 28 U.S.C. §§ 1447(c) and 1927. The district court, acting through a magistrate judge, remanded but decided not to award fees and costs. We affirm.

**I**

Micrometl sued Tranzact in the Circuit Court of Marion County, Indiana, alleging that Tranzact overbilled for services rendered in connection with a shipping services agreement. The facts of the dispute are not relevant to this litigation, except that Micrometl claimed that Tranzact refused to correct overbillings in excess of $100,000. Tranzact removed to federal court for the Southern District of Indiana without objection on March 11, 2008, and then transferred the case to the Northern District of Illinois based on a forum selection clause in the contract. On July 14, 2008, the parties filed a joint status report in which Micrometl reiterated its claim for more than $100,000. Shortly thereafter, Micrometl and Tranzact consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Discovery took place over the next year and a half. Micrometl produced a spreadsheet in August 2009 showing that it had incurred almost $140,000.00 in overbillings, but that it also received refunds from third-party sources that reduced Tranzact's liability to $38,846.98. Tranzact then deposed two Micrometl executives who testified that the amount of potential damages was only $38,846.98 and, importantly, that Micrometl had received the refunds that reduced the overbillings by November 14, 2007—well before Micrometl filed suit in early 2008. Micrometl does not dispute this. It does, however, point out that the spreadsheet in question is in fact a document based on information available to both parties that Tranzact prepared and Micrometl revised after discovery began. In Micrometl's view, Tranzact easily could have crunched the numbers to arrive at the conclusion apparent in the August 2009 document: that Tranzact owed only $38,846.98. Micrometl makes this point with some hesitation, however, since the company also maintains that it is *possible* for it to recover more. Notably, Tranzact does not dispute that it could have figured out that the amount in controversy was lower than Micrometl claimed by doing some simple math. Even so, Tranzact exercised its right to remove to federal court based on the numbers stated in Micrometl's complaint.

This much is clear: once Tranzact had the August 2009 spreadsheet in hand, it had every reason to believe that diversity jurisdiction was lacking because the amount in controversy could not be satisfied. Discovery closed five months later on January 7, 2010, and the parties

participated in a settlement conference at the direction of the court on June 9, 2010. When the conference failed to resolve the dispute, Tranzact filed a motion to remand the case to state court on June 17, 2010. The district court immediately ordered the parties to brief the issue and ultimately remanded the case based on the finding that it was legally impossible for the plaintiffs to recover more than $40,000. See *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006) ("When the complaint includes a number, it controls unless recovering that amount would be legally impossible."). For the purpose of our inquiry, we assume that the district court correctly concluded that the necessary amount in excess of $75,000 was never "in controversy." This determination in any event is unreviewable. See 28 U.S.C. § 1447(d). Our concern is with the court's ancillary order on attorneys' fees and costs. It denied Tranzact's motion for fees and costs under 28 U.S.C. §§ 1447(c) and 1927 and ruled instead that each side should bear its own expenses. Tranzact appeals from that order, which is one over which we have jurisdiction. See *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409-10 (7th Cir. 2000); *Tenner v. Zurek*, 168 F.3d 328, 329 (7th Cir. 1999).

## II

We review a district court's decision to award fees and costs for an abuse of discretion. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir. 2007). To the extent that the decision relies on an interpretation of the fee-shifting statute, our review is *de novo*. See *Wisconsin v. Hotline*

*Indus., Inc.*, 236 F.3d 363, 365 (7th Cir. 2000). The federal removal statute permits a defendant to remove a civil action from state court when a district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Removal in this case was based on 28 U.S.C. § 1332(a), which confers original jurisdiction on federal courts where the amount in controversy exceeds $75,000 and the action is between citizens of different states. If, however, "at any time before final judgment it appears that the district court lacks subject-matter jurisdiction," the case must be remanded. § 1447(c). Section 1447(c) provides that a court "may" require payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* Interpreting this statute, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137 (2005), said that the attorneys' fees provision does not create a strong presumption either for or against awarding fees. Still, the Court wrote, "absent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* at 136. When deciding whether fee-shifting is appropriate, courts should balance the policy objectives of the removal statute and its fee-shifting provision, protecting the right to remove to federal court once certain criteria are met while deterring improper removals as a way to delay litigation. See *id.* at 140.

Most actions seeking fees under § 1447(c) are brought by a plaintiff who wanted all along to be in state court against a defendant who improperly removed. The parties here have spilled much ink debating whether

a defendant can *ever* recover fees pursuant to § 1447(c). This is puzzling, since the statute says nothing about limiting the right to fees to plaintiffs, nor did the district court imply that it lacked the competence to award fees to the defendant. We can assume that it is unusual for a defendant to seek fees and costs associated with removal when it is the party that chose the federal forum after the plaintiff filed in state court. But such cases are not unheard of. See, *e.g.*, *Vaughan v. McArthur Bros. Co.*, 227 F. 364 (8th Cir. 1915) (plaintiff ordered to pay fees for failing to inform court there was no basis for diversity of citizenship after eight years of litigation) and *Duarte v. Donnelley*, 266 F. Supp. 380 (D. Haw. 1967) (plaintiff ordered to pay fees after misrepresenting damages claim that led defendant to remove). Of course, a plaintiff cannot conceal facts necessary to determine whether jurisdiction is secure or otherwise thwart the jurisdictional inquiry with impunity. See *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) (observing that "deliberately to avoid raising the issue [of subject-matter jurisdiction] is improper, indeed sanctionable . . . and quite possible unethical"); *Martin,* 546 U.S. at 141 (observing that "a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees"). In brief, we see no party-based limitation in § 1447(c) on a district court's discretion to award fees and costs.

Tranzact argues that the district court should have awarded fees and costs under § 1447(c) because Micrometl knew or should have known that its damages

could not satisfy the jurisdictional threshold. In support, Tranzact asserts that the district court based its decision on a "clearly erroneous assessment" of the law and facts. But we perceive no errors in the district court's analysis. The court plainly understood that Micrometl had the relevant information in its possession to arrive at a more accurate calculation of the amount in controversy, but it failed to analyze the information to determine how much money was at stake. In that regard, the court agreed with Tranzact's argument that Micrometl should have known that it could not recover the amount required to secure diversity jurisdiction. We also note that the court was not hoodwinked by Micrometl's contradictory arguments, asserting on one hand that the amount in controversy was sufficient to satisfy diversity jurisdiction, yet on the other that it had never claimed that damages were in excess of $100,000. "Entirely disingenuous" is how the court described Micrometl's position, and we are inclined to agree.

We suspect that if that was all there was to this case, the district court would have sided with Tranzact. This is not because Micrometl likely inflated its allegation of damages in state court; in that forum the amount in controversy has no jurisdictional effect. See *Rising-Moore*, 435 F.3d at 815. But if Micrometl knew that the amount in controversy could not satisfy § 1332(a), it should have opposed removal or alerted the district court that jurisdiction was lacking. The court understandably expressed its dismay at Micrometl's failure to do so. Yet the court was equally troubled by Tranzact's ten-month delay in alerting it to the problem with subject-matter

jurisdiction once Tranzact had the relevant facts in hand. In the court's view, Tranzact's delay in seeking remand undercut its entitlement to fees and costs under § 1447(c).

To excuse its foot-dragging, Tranzact points to a verbal order from the court at the close of discovery telling the parties to participate in mediation before filing for summary judgment. This command, according to Tranzact, prevented it from informing the court that it lacked subject-matter jurisdiction and compelled both parties to attend a settlement conference—even though ultimately the court had no authority to resolve the case. This argument makes no sense. Every federal judicial officer knows that subject-matter jurisdiction is a *sine qua non* for a federal proceeding. Nothing about an order regulating discovery or dispositive motions says a thing about this essential feature of the court's power. And no litigant should believe that a judge's order telling the parties to seek mediation before filing for summary judgment would prohibit it from informing the court that the entire matter is not properly before it. What is the point of having a federal judge preside over a settlement conference when the court lacks the authority to hear the case at all? We do not see anything in the district court's statement to the parties on January 7, 2010, that relieved Tranzact (or Micrometl) from its duty to inform the court if jurisdiction was absent. See generally FED. R. CIV. P. 12(h)(3). As lawyers who practice in federal courts certainly know, they "have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress; it is precisely to impose a duty of assistance on the bar that lawyers are

called 'officers of the court.'" See *BEM I, LLC*, 301 F.3d at 551. We do not accept the argument that a court's instruction to the parties to attend a settlement conference in any way relieved either party of the duty to raise a jurisdictional issue.

Next, Tranzact contends that the district court decided not to award fees and costs based on an erroneous understanding of the law. In its view, because § 1447(c) says that a case can be remanded "at any time" for lack of subject-matter jurisdiction, the court's ruling based on a delay is in conflict with the statute. A brief look at the statute illustrates why this strained argument has no merit. In relevant part, § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c). The first sentence explains when a case must be remanded for a lack of jurisdiction, which as a practical matter—wholly unrelated to the fee-shifting provision—is almost always. The reason for this, of course, is that federal courts are forums of limited jurisdiction that may not hear cases over which they have no legal authority. The second sentence gives district court discretion to decide when the remand order should include an award of "just costs and actual expenses" to a party based on the other's conduct relating to removal.

Tranzact contends that the statute should be in-
terpreted as follows: a party's delay in revealing facts
showing that the court lacks subject-matter jurisdiction
is irrelevant to an award of fees and costs "incurred as
a result of removal" because remand is appropriate
"at any time" before final judgment. That reading turns
the purpose of the fee-shifting on its head. It is precisely
because a case must be remanded at any time when a
court lacks jurisdiction that Congress sought to deter
improper removals and delays in seeking remand by
enacting the fee-shifting provision. See *Martin*, 546 U.S. at
140-41 (observing that assessing costs and fees on
remand deters the use of removal as a way to delay
litigation). When a party fails to disclose facts necessary
to determine whether jurisdiction is secure, it imposes
significant costs on the other party and squanders
judicial resources. By statutory mandate, the case will
have to be remanded to begin anew in state court no
matter how far the proceedings have progressed
(before final judgment) if a federal court determines
jurisdiction is lacking. That is exactly what happened
here: both parties expended considerable resources in
these proceedings, wasting judicial resources along the
way, only to have the case remanded. The fee-shifting
provision deters this. We have no trouble concluding
that the district court did not abuse its discretion by
considering Tranzact's delay in seeking remand as part
of its decision not to award fees and costs pursuant to
§ 1447(c).

Naturally Tranzact prefers that we focus on
Micrometl's failure properly to calculate and disclose

the amount in controversy, rather than its own delay. It emphasizes this point in support of its argument that the district court erred in refusing to award fees pursuant to 28 U.S.C. § 1927. Section 1927 is a sanctions statute intended "to deter frivolous litigation and abusive practices by attorneys and ensure that those who create unnecessary costs also bear them." *Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citations omitted). A sanctions award requires a finding of bad faith on the part of an attorney who "unreasonably and vexatiously" multiplies the proceedings in a case. See *Shales v. General Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009). Yet here the court found that Micrometl did not litigate in bad faith, concluding that there was no "gamesmanship" on Micrometl's part. We see no reason to jettison the court's analysis of the facts, particularly under our deferential standard of review. We might have seen things differently if Micrometl had filed in federal court based on its dubious estimate of damages, and then Tranzact was compelled to seek a dismissal based on the lack of jurisdiction. *Cf. Smith v. American General Life and Acc. Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003) (noting "the assumption that a plaintiff would not fabricate the amount in controversy to meet the federal diversity jurisdiction requirements and then file her suit in state court relying on the defendant to remove the case to federal court"). But, as the district court concluded, nothing in this record suggests that Micrometl's counsel inflated its damages in its state court complaint to dupe Tranzact into removing, or otherwise exhibited bad faith through-

out these proceedings. Therefore, we conclude that the district court suitably exercised its discretion by requiring each party to bear its own costs.

The judgment of the district court is AFFIRMED.