In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-2640

LANCE WISE and NANCY WISE,

*Plaintiffs-Appellants*,

*v.*

WACHOVIA SECURITIES, LLC, and NASD,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 7438—**Wayne R. Andersen**, *Judge*.

———————

ARGUED FEBRUARY 10, 2006—DECIDED JUNE 7, 2006

———————

Before POSNER, RIPPLE, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*.  Lance and Nancy Wise appeal from the district court's refusal to set aside a decision by a panel of arbitrators that denied them relief. Before proceeding to the merits, we must consider a jurisdictional question mishandled by the parties and the district court. The jurisdictional statement in the plaintiffs' brief bases federal jurisdiction on the Federal Arbitration Act, period. But the Act (9 U.S.C. §§ 1 *et seq.*) confers federal jurisdiction in cases involving arbitration only of disputes that, were they litigated rather than arbitrated, would be within federal

jurisdiction. 9 U.S.C. § 4; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 n. 32 (1983); *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 384 F.3d 901, 904-05 (7th Cir. 2004). The only possible such jurisdictional ground in this case would be diversity of citizenship, and the plaintiffs' jurisdictional statement says nothing about the citizenship of any of the parties. The defendants' statement correctly notes that the basis of jurisdiction must be found outside the Federal Arbitration Act, and asserts that the basis here is diversity. But in violation of 7th Cir. R. 28, the statement does not indicate the citizenship of any of the parties, but merely asserts that they are citizens of different states. Rule 28(a)(1) requires in a diversity suit that the jurisdictional statement name the states of which the parties are citizens. The plaintiffs' reply brief does not mention jurisdiction.

The parties' insouciance about jurisdiction, besides being unprofessional, is particularly disturbing because the defendants are not standard business corporations, and any lawyer who practices in federal court should realize that ascertaining the citizenship of other artificial persons can be tricky. The NASD (formerly called the National Association of Securities Dealers) is a membership corporation—a corporation, ordinarily a nonprofit, that has members but not stock. Wachovia Securities is a limited liability company.

Because the overriding goal in crafting a jurisdictional rule is simplicity, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988), the courts have held that all corporations are to be treated alike for diversity purposes: all are citizens both of the state of incorporation and the state in which the corporation has its principal place of business. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg*, 385 F.3d 737, 738-39 (7th

Cir. 2004); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983). In the case of the NASD those states are Delaware and Washington, D.C. The citizenship for diversity purposes of a limited liability company, however, despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members. *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881 n. 1 (7th Cir. 2004); *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004); *Handelsman v. Bedford Village Associates Limited Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000); see also *Carden v. Arkoma Associates*, 494 U.S. 185, 192-96 (1990). Wachovia Securities, LLC, it turns out, is owned by another limited liability company, which is owned in turn by two affiliated corporations one of which is a citizen of North Carolina and the other a citizen of New Jersey. The plaintiffs, we have learned, are citizens of Illinois. So there is the required diversity of citizenship, and we can proceed to the merits.

The Wises had become customers of an investment adviser named Scott Winters when he was employed by Merrill Lynch. Winters left Merrill for Wachovia and the Wises went with him, opening an account with Wachovia and agreeing to arbitrate under rules of the NASD any dispute arising from their dealings with the firm. In March 2000 Winters recommended that the Wises invest in a new investment fund called the "Titan Fund." He told them he'd invested $2 million of his own money in Titan. On April 10 the Wises directed Winters to convert the holdings in their Wachovia account to cash. He did this, and three days later the Wises closed the account, which now had $135,000 in cash in it, and wired all the money to Titan. Winters had

quit Wachovia the day before the Wises wired the money to Titan.

Months later the Wises discovered that the Titan Fund was a sham and their entire investment lost. Securities regulators in California, where Winters lived, later ordered him to stop acting as an investment adviser in that state. The order was based on findings that he had made misrepresentations in marketing the Titan Fund; for example, his own investment in the fund had been not $2 million, but zero.

The Wises complained to Wachovia, contending that the firm was responsible for Winters' fraud because he had hatched it before he resigned from the firm. They claimed to have had no idea that the Titan Fund had not been recommended by Wachovia—no idea that Winters had been on a frolic of his own in persuading them to invest in Titan.

Their complaint, rejected by Wachovia, was referred to arbitration pursuant to their contract with the firm. At the conclusion of discovery in the arbitration, Mr. Wise submitted an affidavit reciting the facts summarized above. He attached documents relating to his ill-starred investment in the Titan Fund. Wachovia submitted no evidence but moved for summary judgment, which the panel of arbitrators granted without explaining the basis of their decision. Arbitrators have, however, no duty to explain. *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 204 n. 4 (1956).

The Federal Arbitration Act lists the following grounds for setting aside an arbitral award (an arbitral decision is called an "award" whether or not it awards anything to the complainant).

> (1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Wises argue that there was not even an atom of evidence to support summary judgment for Wachovia. The argument might seem to invoke the provision in section 10(a)(3) that authorizes vacating an award for "refusing to hear evidence pertinent and material to the controversy," but the arbitrators did not limit the Wises' presentation of evidence. The Wises further argue that since there was no evidence to support the award, the award must be set aside as being "arbitrary and capricious." But "arbitrary and capricious" is not among the listed grounds for setting aside an award. *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir. 1985); see also *National Wrecking Co. v. International Brotherhood of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993). And although courts will also set aside arbitration awards that are in "manifest disregard of the law," e.g., *id.*, and this is often described as a nonstatutory ground, e.g., *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460-61 (11th Cir. 1997); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997), we have defined "manifest disregard of the law" so narrowly

that it fits comfortably under the first clause of the fourth statutory ground— "where the arbitrators exceeded their powers." Cf. *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059-60 (9th Cir. 1991); Ian R. Macneil et al., *Federal Arbitration Law* § 40.1.3.2 (3d ed. 1999). For we have confined it to cases in which arbitrators "direct the parties to violate the law." *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001); see also *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645, 650 (7th Cir. 2001). Obviously this is not such a case.

It is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not. *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc.—conduct to which the parties did not consent when they included an arbitration clause in their contract. That is why in the typical arbitration, which unlike the one in this case is concerned with interpreting a contract, the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all, e.g., *Tice v. American Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004); *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987); *Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 788 (8th Cir. 2003), for only then were they exceeding the authority granted to them by the contract's arbitration clause.

Reluctantly driven back to the statutory grounds for setting aside the arbitrators' award, the Wises ask us to infer

corruption, partiality, exceeding granted authority, etc., from the absence of any evidence to support the arbitrators' award. Absence of evidence as such is not a statutory ground and does not fit our narrow concept of "manifest disregard," though it may that of other courts. See *Labor Relations Division v. Teamsters Local 379*, 156 F.3d 13, 20-21 (1st Cir. 1998); *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 139 (6th Cir. 1996). But if this were really a no-evidence case, there might be some basis for inferring the presence of one or more of the statutory grounds. Suppose the Wises had presented overwhelming evidence that Wachovia had defrauded them and Wachovia had responded with no evidence, no argument even, but merely a one-word denial: "No." If the arbitrators nevertheless awarded judgment to Wachovia, a court might infer that the arbitrators had had a corrupt motive or at least that they had exceeded the powers granted to them by the arbitration clause.

The best interpretation of the Wises' substantive claim is as follows: A principal generally is not liable for the wrong-doing of an agent who is acting wholly for himself. But there is an exception if, acting with apparent authority, the agent commits a fraud against a third party who reasonably believed that he was entering into a bona fide transaction with the agent's principal. That is the rule of *Gleason v. Seaboard Air Line Ry.*, 278 U.S. 349 (1929); see *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 471 (7th Cir. 1999); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1211 (7th Cir. 1993), and the Wises' characterization of the wrong done to them.

But they may have known that Winters was on a frolic of his own in marketing the Titan Fund to them, and if they knew this—knew that he was acting beyond the authority granted to him by his employer—they could not

have been relying on any appearance of authority when they invested in the fund, and so their theory of liability would collapse. It is true that the only evidence before the arbitrators was Mr. Wise's affidavit, which did not acknowledge that he knew that Winters was not acting for Wachovia. But arbitrators, like judges and jurors, are allowed to use their common sense and background knowledge to draw inferences from what the evidence shows. And from what it omits. The Wises' relationship was with Winters rather than with Wachovia. They had been his customers when he was at Merrill Lynch and when he moved to Wachovia they moved with him. When he decided to leave Wachovia and make his fortune with the Titan Fund (of which he was the sponsor and president), the Wises decided to go with him once again, abandoning Wachovia—or so at least the arbitrators could find without taking leave of their senses. The inference that the Wises were dealing with Winters as principal rather than as agent is reinforced by the curious fact that they closed their account with Wachovia. Ordinarily when an investor decides to change his investments, he directs his broker to replace the securities in his account with other securities—he doesn't close the account. The closing of their account is a further indication that the Wises were indeed leaving Wachovia with Winters.

AFFIRMED.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*