# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-3928

PETER A. PROSTYAKOV,

*Plaintiff-Appellee,*

*v.*

MASCO CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 C 1430—**Sarah Evans Barker**, *Judge.*

ARGUED SEPTEMBER 25, 2007—DECIDED JANUARY 22, 2008

Before EASTERBROOK, *Chief Judge*, and BAUER and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. The district court granted Peter Prostyakov's petition to confirm his arbitral award against Masco Corporation and, in so doing, denied Masco's application to vacate the award on the ground that the arbitrator exceeded his authority when fashioning it. *See* 9 U.S.C. § 10(a)(4). Masco appeals, arguing that the district court erred by confirming the award. Prostyakov, in turn, asserts that Masco's appeal is frivolous, and asks us to sanction Masco by ordering it to pay for his attorneys' fees and costs. We affirm the district court's judgment, but deny Prostyakov's motion.

## I. HISTORY

The origins of this arbitration action can be traced back sixteen years to the dissolution of the Soviet Union. Shortly after the Soviet Empire fell in late 1991, the State of Indiana and the Moscow Oblast province co-founded a trade consortium that coordinated American businesses' efforts to establish a market presence in the newly capitalistic Russian economy. Masco, a Michigan-based corporation that specializes in building, plumbing, and cabinetry products, joined the consortium in 1992 with the aspiration of developing a sales and distribution network throughout the nascent Russian Federation. One of the men that Masco hired to achieve this goal was Prostyakov, who, all parties agree, played a central role in developing the company's Russian presence. In December 1995, Masco rewarded Prostyakov for his efforts by appointing him Managing Director and Agent of its Moscow-based office.

For a while Masco and Prostyakov's business relationship went swimmingly, but then things quickly went south. As often is the case in these situations, both Masco and Prostyakov blamed each other for their deteriorating relationship. The parties' respective accusations are not important for the purpose of this appeal, but what is important is that on April 9, 1996, Masco President and CEO Richard Manoogian issued a company directive addressed to "the appropriate officials of the Russian Republic," stating that Prostyakov was "removed" from his position with Masco. Although Prostyakov never received the Manoogian-authored directive—or any other written confirmation of his "removal" from his position with Masco—he and Masco began to negotiate the end of their business relationship; these negotiations culminated with the parties entering into a Settlement Agreement on June 18, 1996. As relevant here, Masco and Prostyakov mutually agreed to release all claims that either party could bring against the other based on acts that occurred

before the Agreement took effect. Masco and Prostyakov further agreed that: (1) Indiana law would govern the interpretation of the Agreement; (2) any future disputes between them would be settled by "private" arbitration; (3) the rules of the American Arbitration Association (AAA) would apply and govern the conduct of the arbitration; and (4) neither party would seek to enforce the Agreement through legal action.

Moreover, the parties agreed that the end of their business relationship was "amicable," and would be communicated to interested third parties as such. As part of the "amicable" separation, Masco agreed to announce publicly that it and Prostyakov had been "working for the past couple of months to disengage from their previous business relationship" because Prostyakov "decided to seek other business opportunities for himself"; that disengagement, the announcement stated, "was finally accomplished on June 18, 1996." Masco and Prostyakov then went their own ways.

His separation from Masco complete, Prostyakov sought an executive position with the Federal Industrial Bank in Moscow. Prostyakov's overtures were successful, and he entered into an employment contract to join the bank as Deputy Chairman of the Board of Directors on July 31, 1996. Prostyakov was required under the contract to submit by his start date all documents necessary to formalize his employment under the Russian labor code, including his Labor Book. As we will see, Prostyakov encountered some problems with his Labor Book that are central to this appeal. But before we recount those problems we must first explain the Russian Labor Book.

For those not familiar with Russian labor law, the Labor Book is a creation of the Soviet-era labor code that survived the collapse of the Soviet Union. *See* W.E. Butler, *Soviet Law* 230 (2d ed. 1988); Amy J. Bliss, Comment, *Proletariat to Perestroika: A Comparison of Labor Law*

*in the Soviet Union and the Russian Federation*, 18 Comp. Lab. L. 264, 297-98, 301-06 (1997); John Knab, *Complying with Russia's Labor Code*, Bus. Info. Service for Newly Indep. States (Dec. 1997/Jan. 1998), http://permanent.access.gpo.gov/lps1733/9801code.htm. The Labor Book's purpose, though arguably antiquated, is quite simple: it is a Russian citizen's record of his employment history. *See* Butler, *supra*, at 230; Bliss, *supra*, at 305; Knab, *supra*. Every Russian citizen entering the workforce is issued a Labor Book, which the citizen must submit to his employer once his employment begins. *See* Butler, *supra*, at 230; Bliss, *supra*, at 305-06; Knab, *supra*. The employer retains the Labor Book throughout the period of employment and records in it the employee's work experience. *See* Butler, *supra*, at 230; Knab, *supra*. If the employee is dismissed, the employer must, at the time of dismissal, record in the Labor Book the specific reason for dismissal by citing the provision of the labor code under which the dismissal was carried out; if the employment relationship was terminated by mutual agreement, the employer likewise must state so. *See* Butler, *supra*, at 230; Knab, *supra*. The employer must then immediately return the Labor Book to the employee. Butler, *supra*, at 230; Knab, *supra*.

Prostyakov submitted his Labor Book to Masco when the company hired him, and Masco retained the Labor Book throughout the period of his employment. But Masco did not immediately return Prostyakov's Labor Book to him once his employment ended. In fact, after the parties entered into the Settlement Agreement on June 18, 1996, Masco ignored Prostyakov's repeated requests for his Labor Book. Masco's stonewalling, in turn, made it impossible for Prostyakov to submit his Labor Book to the Federal Industrial Bank by his first day, which forced him to renegotiate his start date so he could have additional time to recover the Labor Book.

Prostyakov finally recovered his Labor Book in late August 1996; it was then that he saw, for the first time, Masco's entry regarding his employment history with the company. Simply put, Masco wrote that on April 12, 1996, Prostyakov was fired, or, as the entry put it exactly, "[d]ismissed by the decree of the Directors' Council of Masco Corporation USA from Moscow Representation of Masco Corporation USA." Although Prostyakov knew the entry was incorrect, he immediately delivered the Labor Book to the Federal Industrial Bank to fulfill his obligation under the employment contract. The next day, though, the bank returned Prostyakov's Labor Book to him along with a letter terminating their employment contract; in the letter the bank stated that it could not "hire a new employee for a supervisory position if this potential employee had been fired by a corporate management from the place of his latest employment because of unclear reasons."

Shortly after the Federal Industrial Bank cancelled the employment contract, Prostyakov's former co-worker at Masco, Inna Kalinina, informed him that Masco's Labor Book entry had been intentionally falsified. Specifically, Kalinina stated that, immediately before Masco was to return the Labor Book to Prostyakov in August 1996, Prostyakov's successor at the company ordered her to backdate an entry stating that Prostyakov had been fired on April 12, 1996, contradicting the Settlement Agreement's provision that Prostyakov left under "amicable" circumstances. Prostyakov accordingly asked Masco to correct the Labor Book entry, but when his requests fell on deaf ears he asked Masco to resolve the dispute through arbitration. Masco, however, simply ignored Prostyakov's arbitration requests, a fact that Masco's general counsel would later readily admit.[1]

---

[1] Masco's general counsel, Greg Wittrock, was asked at the arbitration hearing underlying this case if he responded to
(continued...)

Seeing no other course of redress, Prostyakov turned to the Russian judicial system in January 1997. He filed a complaint in the Noginsk City Court, alleging that Masco violated the Russian labor code with its backdated and falsified Labor Book entry. After years of navigating the Russian legal system, Prostyakov finally obtained a default judgment against Masco in March 2002, declaring that Masco did, indeed, violate the labor code with its Labor Book entry.

Armed with the Russian court judgment, in February 2003 Prostyakov filed with the AAA a demand for arbitration. Prostyakov claimed that Masco breached the Settlement Agreement by authoring the "fraudulent" Labor Book entry. He therefore requested an award of both monetary damages stemming from the loss of his employment with the Federal Industrial Bank, and equitable relief in the form of an Executive Order from Manoogian, correcting the Labor Book entry.

Masco responded to Prostyakov's demand for arbitration by arguing that the AAA lacked "jurisdiction" over the dispute—which, in this context, meant that the parties did not agree to have the AAA arbitrate the claims. Instead, Masco asserted, the Settlement Agreement stipulated only that arbitration would be "conducted privately," meaning without AAA assistance. Masco's objections to AAA participation greatly prolonged the arbitrator-selection process, and it was over a year before the parties could agree on an arbitrator—Indianapolis attorney Max J. Hittle, Jr. Although Masco informed Prostyakov that Arbitrator Hittle "would be an acceptable

---

[1] (...continued)

Prostyakov's request to arbitrate Masco's Labor Book's entry. Wittrock flippantly responded, "By silence, yes." We will address Wittrock's response later in this Opinion. *See infra* Part II.D.

arbitrator," it continued to assert that his involvement was improper because of his affiliation with the AAA. Masco accordingly moved to dismiss Prostyakov's claims on the basis that Hittle was not authorized to serve as arbitrator. Hittle denied Masco's motion, concluding that he had authority because Masco and Prostyakov had selected him by following the procedures set forth in the Agreement, and had submitted to AAA involvement by stating in the Agreement that AAA rules would govern the arbitration proceedings.

Despite continuing to object to Arbitrator Hittle's authority to oversee the dispute, Masco became an active participant in the arbitration. Specifically, Masco counterclaimed on the ground that Prostyakov breached the Settlement Agreement by initiating the Russian legal action instead of seeking arbitration. Masco also filed a second motion to dismiss, this time arguing that Prostyakov's claim involving the Labor Book was nonarbitrable because it fell outside the scope of the Agreement. Hittle rejected that argument and denied Masco's motion, but allowed the company to proceed on its counterclaim.

The arbitration hearing occurred over a four-day period in 2005, during which both Masco and Prostyakov presented testimony and evidence supporting their positions. Significantly, both parties presented experts on the Russian labor code to testify about the legality of the termination of Masco and Prostyakov's business relationship. Prostyakov's expert testified that the directive issued by Manoogian on April 9, 1996, which purported to fire Prostyakov was, under the labor code, an ineffective method of dismissing Prostyakov from his position because the directive never was delivered to him. Moreover, both Masco's and Prostyakov's legal experts agreed that Masco's Labor Book entry violated the labor code because it was backdated, incorrectly stated that

Prostyakov was fired, and did not cite the specific labor code provision for termination of employment by mutual agreement. Both experts further agreed that Masco's corporate board could correct the entry by issuing a new Executive Order, nullifying both the incorrect entry and Manoogian's April 9 directive.

On August 15, 2005, Arbitrator Hittle issued a thorough decision detailing his awards for both Masco and Prostyakov. Hittle first decided for Masco on its counterclaim, determining that, under Indiana law, Prostyakov breached the Settlement Agreement by bringing the Russian legal action instead of initiating arbitration. Hittle accordingly awarded Masco approximately $63,000 for the attorneys' fees and costs it incurred defending that action.

Arbitrator Hittle also decided, however, that Masco breached the Settlement Agreement by not immediately returning Prostyakov's Labor Book to him, and by authoring the "harmful, retaliatory in nature, [and] incorrectly dated" Labor Book entry. Because Masco's breach cost Prostyakov his employment with the Federal Industrial Bank in Moscow, and because the Labor Book itself was a creation of the Russian labor code, Hittle determined that Indiana's conflict-of-law provisions required him to apply the Russian labor code to fashion an award for Masco's breach; as Hittle explained, the labor code was the law "of the forum with the most intimate contacts" governing the dispute. Applying the labor code to determine "the parties' rights and obligations," Hittle concluded that Masco owed Prostyakov approximately $780,000 in damages, attorneys' fees, and costs. Hittle also relied on the testimony of the Russian labor law experts and ordered Manoogian to annul the directive he issued on April 9, 1996, and correct Masco's Labor Book entry by issuing a new Executive Order; that Order was to state that the "Board of Directors of Masco hereby acknowledge and agree that Peter Alexandrovich Prostyakov

is discharged as Managing Director and Agent of Masco Corporation in the Russian Federation this 15th day of August, 2005, pursuant to the Mutual Agreement of Peter A. Prostyakov and Masco Corporation."

Prostyakov then petitioned the district court to confirm Arbitrator Hittle's award. Masco, in turn, filed a timely motion to vacate the award, *see* 9 U.S.C. § 12; *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 571-74 (7th Cir. 2007), arguing, as relevant here, that Hittle exceeded his powers as arbitrator when fashioning it, *see* 9 U.S.C. § 10(a)(4). Specifically, Masco reasserted both its challenge to Hittle's authority to serve as arbitrator because of his affiliation with the AAA, and its argument that the Labor Book dispute fell outside the scope of the Settlement Agreement. Masco also contended that Hittle fashioned an improper award by (1) ignoring the Agreement's choice-of-law provision when applying the Russian labor code; and (2) forcing Masco to "rewrite history" by ordering it to state in the Executive Order that Prostyakov left Masco on August 15, 2005.

The district court rejected Masco's arguments, agreeing first with Arbitrator Hittle's determination that he had authority over the dispute because he was selected by Masco and Prostyakov according to the procedure outlined in the Settlement Agreement. The court further agreed that the Labor Book dispute was arbitrable because the Agreement "was intended to resolve all loose ends regarding the failed employment relationship between the parties," and that the "Labor Book issue certainly was such a loose end." Finally, the court determined that the award itself was proper. Hittle, the court stated, attempted to apply Indiana's conflict-of-law provisions accurately when fashioning the award, and thus did not exceed his authority by applying an "unusual amalgam of Indiana and Russian law." Moreover, the court added, Hittle's award of the corrective Executive Order was "well within the

bounds of what the Arbitrator may permissibly require in equity." The court accordingly denied Masco's motion, granted Prostyakov's petition, and confirmed the arbitral award.

## II. ANALYSIS

Masco attacks the district court's confirmation of Prostyakov's arbitral award on the grounds that the court incorrectly determined that Arbitrator Hittle acted within his powers when fashioning it. *See* 9 U.S.C. § 10(a)(4). In so doing, Masco merely reasserts the three arguments it raised before the district court, specifically that: (1) Hittle lacked the proper authority to serve as arbitrator because the Settlement Agreement precluded the involvement of AAA-affiliated arbitrators; (2) the Labor Book dispute was not arbitrable because it fell outside the scope of the Agreement; and (3) Hittle fashioned improper monetary and equitable awards. Prostyakov responds that each of Masco's arguments not only are frivolous but also are raised in bad faith, and accordingly asks us to sanction Masco. We accept the district court's findings of fact that are not clearly erroneous and review questions of law *de novo. Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001).

We address Masco's arguments with some frustration. We repeatedly have stated that we do not—and will not—review arbitral awards for legal or factual error. *See, e.g.*, *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006); *George Watts & Sons, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). *But see Hall St. Assocs., LLC v. Mattel, Inc.*, 196 F. App'x 476 (9th Cir. 2006), *cert. granted* 127 S. Ct. 2875 (2007) (granting petition for writ of *certiorari* on issue of whether arbitration agreements calling for expanded judicial review of

arbitral awards are enforceable). To do so would defeat the purpose of entering into an arbitration agreement in the first place—to opt out of the judicial system—and we will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview. *See Wise*, 450 F.3d at 269; *Baravati*, 28 F.3d at 706 ("[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision.").

It is true, as Masco points out, that review is available under the Federal Arbitration Act when the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); *see also Wise*, 450 F.3d at 268-69. But even then our review is extremely limited, *see Baravati*, 28 F.3d at 706, and we will not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement *at all*, *see Wise*, 450 F.3d at 268-69; *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004). For instance, we have explained that we will vacate an award when the arbitrators' interpretation was "so wacky that it was no interpretation at all," *Tice*, 373 F.3d at 85; *see also Wise*, 450 F.3d at 268-69, or when the arbitrator consciously refused to apply the parties' agreed-upon choice of law when fashioning the award, *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 554 (7th Cir. 2002). But in short, we will uphold an arbitral award unless "'there is no possible interpretive route to [it], so a non-contractual basis can be inferred.'" *Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 562 (7th Cir. 2006) (quoting *Arch of Ill. v. Dist. 12, UMW*, 85 F.3d 1289, 1293-94 (7th Cir. 1996)).

Masco concedes that Arbitrator Hittle interpreted the Settlement Agreement when fashioning his award for

Prostyakov. The pertinent issue thus becomes whether Hittle exceeded his powers by formulating an award based on an interpretation of the Agreement that was egregiously off-base, *see Wise*, 450 F.3d at 268-69, or through a blatant disregard of the Agreement's choice-of-law provisions, *see BEM I*, 301 F.3d at 554. As we explain below, he did neither.

### A. Arbitrator Hittle's Authority to Participate in the Arbitration

We can quickly dispose of Masco's argument that the Settlement Agreement barred Arbitrator Hittle's participation. Specifically, Masco asserts that the Agreement provided that the arbitration would be conducted "privately," meaning without the involvement of the AAA and, by virtue of his AAA affiliation, without Hittle. But nothing in the Agreement expressly or implicitly defines a "privately" conducted arbitration as one that excludes the participation of the AAA; we will not interpolate that meaning here. *See Ross Bros. Constr. Co. v. Int'l Steel Servs.*, 283 F.3d 867, 875 (7th Cir. 2002) (noting that, under Pennsylvania law, "arbitration agreements are to be strictly construed and not extended by implication"); *Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006) ("[A]rbitration agreements will not be extended by construction or implication."); *see also Geneva Secs., Inc. v. Johnson*, 138 F.3d 688, 691-92 (7th Cir. 1998) ("[A]rbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties."). And Masco and Prostyakov did, in fact, submit to AAA participation by agreeing that the arbitration would be governed by AAA rules. Rule R-2 of AAA Commercial Arbitration Rules states that "when parties agree to arbitrate under these rules . . . they thereby authorize the AAA to administer the

arbitration." *See also Dockser v. Schwartzberg*, 433 F.3d 421, 424-25 (4th Cir. 2006). Nothing more needs to be said.

### B.  *The Arbitrability of the Labor Book Dispute*

Equally meritless is Masco's challenge to Arbitrator Hittle's determination that the Labor Book dispute was arbitrable. Masco argues that the Settlement Agreement contains a mutual release of all claims between it and Prostyakov stemming from their failed business relationship, including all issues involving the Labor Book. Masco also asserts that, in any event, the issues surrounding Prostyakov's Labor Book are not arbitrable because "the Russian Labor Book issues are completely separate from the Settlement Agreement" and, as such, "should not be tied together."

But contrary to Masco's assertion, the Settlement Agreement did not release all claims stemming from the Labor Book. Instead, the Agreement released only those "claims based on pre-existing acts occurring at any time up to the date of this Agreement." The basis for Prostyakov's arbitration claim was Masco's post-Agreement malfeasance, notably, its withholding of his Labor Book and authoring of the backdated and incorrect Labor Book entry. Moreover, the fact that Masco and Prostyakov did not specifically agree to arbitrate claims related to the Labor Book is irrelevant to whether the dispute is arbitrable. Prostyakov's claim turns not upon his Labor Book itself, but instead upon *the content* of Masco's Labor Book entry—namely, the company's assertion that Prostyakov was fired. Masco knew that Prostyakov would have to present his Labor Book to his next employer, and with its Labor Book entry Masco breached its agreement to inform interested third parties that it and Prostyakov ended their business relationship "amicably." By entering into the Agreement, Masco agreed to arbitrate disputes

regarding how the end of the business relationship is communicated to third parties, and the company cannot now assert that Prostyakov was barred by the Agreement from doing exactly that.

## C. *Arbitrator Hittle's Monetary and Equitable Award*

Finally, Masco argues that Arbitrator Hittle exceeded his powers by fashioning the monetary and equitable awards for Prostyakov. As to the monetary award, Masco argues that Hittle "deliberately" ignored the Settlement Agreement's choice-of-law provision—which states that the Agreement "shall be construed in accordance with the laws of the State of Indiana"—and instead "purposefully applied Russian law to effect an international remedy when it is clear that no remedy would have existed under Indiana law." *See also BEM I*, 301 F.3d at 554. This greatly misconstrues Hittle's decision, however, because he did not disregard the Agreement's choice-of-law provision. Indeed, Hittle abided by the choice-of-law provision by applying Indiana law to determine that Masco breached the Agreement by delaying the return of Prostyakov's Labor Book and by authoring the false Labor Book entry. Hittle then followed Indiana's conflict-of-law provisions to apply the Russian labor code to fashion the award; as Hittle explained, "[i]n matters of contract interpretation, Indiana's conflict of law [sic] principles provide that the law of the forum with the most intimate contacts to the facts governs."

Masco, though, argues that Arbitrator Hittle's interpretation of Indiana's conflict-of-law provisions was error because "[t]he most-intimate contacts test [sic] applies only when the parties have not otherwise agreed [to apply Indiana] law." It may be that the Masco is correct and that Hittle so erred, but it also is irrelevant. Hittle was required only to put forth a good-faith effort to interpret

and enforce the Settlement Agreement's provisions; he was not required to interpret and enforce them correctly. *See, e.g.*, *Wise*, 450 F.3d at 269; *BEM I*, 301 F.3d at 554. And because we can easily discern the "interpretive route" Hittle followed when fashioning the award, it is not our place to determine whether his interpretation was correct as a matter of law. *See Cuna Mut. Ins. Soc'y*, 443 F.3d at 562; *George Watts & Sons*, 248 F.3d at 579 ("'The question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.'" (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987))).

Masco's challenge to Arbitrator Hittle's equitable award also fails. Masco argues that Hittle exceeded his authority by compelling Masco to state that he left the company on August 15, 2005; that statement, Masco asserts, contradicts both the record and Hittle's own conclusion "that Prostyakov was terminated in April 1996." Masco once again misconstrues Hittle's decision. Although it is not the most artfully drafted, nothing in the Executive Order requires Masco to state that Prostyakov was fired on August 15, 2005. Instead, the Order requires Masco to state that on August 15, 2005, "the Board of Directors agree that Prostyakov was discharged from his position pursuant to the Mutual Agreement," which, all parties agree, was reached through the Settlement Agreement on June 16, 1996. Likewise, Hittle did not conclude that Prostyakov was terminated in April 1996. Hittle instead determined that Manoogian merely attempted to terminate Prostyakov by issuing the directive on April 9, 1996, and noted that Masco's Labor Book entry stated that

Prostyakov was fired on April 12, 1996. Adopting the conclusion of Prostyakov's Russian labor-law expert, Hittle then determined that Manoogian's directive did not terminate Prostyakov because it was kept from him, and that Masco violated the Russian labor code by authoring the incorrect Labor Book entry. Thus, Hittle concluded, Prostyakov was discharged only when the parties entered into the Agreement on June 18, 1996, a finding that is entirely consistent with Masco's own public announcement that Prostyakov left the company on that date. Nothing in the Agreement limited Hittle's authority to fashion this equitable award. *See George Watts & Sons*, 248 F.3d at 581 ("[W]hen the parties agree to arbitrate without specifying a rule of decision . . . then the arbitrator has considerable leeway so long as he respects the limits the parties' contract and public law place on his discretion."); *cf. Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Local 150*, 348 F.3d 671, 678 (7th Cir. 2003) ("'Where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.'" (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987))). And because we can determine how Hittle fashioned the award, we see no reason why it should not stand. *See Baravati*, 28 F.3d at 709-10 ("It is commonplace to leave the arbitrators pretty much at large in the formulation of remedies . . . .").

## D.  Prostyakov's Motion for Sanctions

All that remains for us to address is Prostyakov's motion for sanctions in the form of attorneys' fees and costs. As Prostyakov asserts, Masco took this frivolous appeal only "to delay enforcement of the District Court Judgment," "tax [his] resources," and "needlessly burden this Court."

*See also* Fed. R. App. P. 38. We are inclined to agree with those characterizations. Not only are Masco's arguments legally meritless, but they appear to have been made disingenuously and based on misrepresentations of the record. Masco's actions during the past ten years of this litigation—embodied by Masco's general counsel's petulant behavior, *see supra* Part I & n.1—further support the imposition of sanctions. In all, Masco has made "a mockery of arbitration's promise to expedite and cut the costs of resolving disputes," *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1163 (7th Cir. 1990); *see also PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052-53 (7th Cir. 1988), by prolonging this matter long after it agreed with Prostyakov to settle any disputes through arbitration. We thus are tempted to grant Prostyakov's motion for sanctions for attorneys' fees and costs.

Nevertheless, we think it is unnecessary in this case to award attorneys' fees and costs. Requiring the payment of attorneys' fees and costs as a sanction serves two purposes: (1) "to protect the court from the burdens of fruitless litigation"; and (2) to prevent "the prevailing party from having to bear the cost of defending against utterly meritless contentions." *Bacon v. Am. Fed'n of State, County & Mun. Employees Council, #13*, 795 F.2d 33, 34 (7th Cir. 1986). We will, for this moment only, look past the inconvenience we have endured while addressing Masco's appeal, and instead will focus on whether the sanction would benefit Prostyakov. And it is here that we conclude that Prostyakov already is well protected by the Settlement Agreement's indemnification clause, which reads, in pertinent part, that "[i]n the event of a breach of this Agreement, the Breaching party will indemnify and hold the other harmless from *any and all* resulting claims, *including attorney's fees and costs*." (Emphasis added.) In other words, Masco—as the breaching party—already has agreed to reimburse Prostyakov

for attorneys' fees and costs stemming from the litigation before both the district court and us. We need not circumvent this contractual arrangement by awarding Prostyakov a windfall of further fees and costs.

We trust that Masco will promptly contact Prostyakov and pay what it owes him. We hope our faith is not misplaced; our opinion on this matter could change drastically if Masco continues to prolong this dispute needlessly. *See Prod. & Maint. Employees' Local 504*, 916 F.2d at 1163; *PaineWebber Inc.*, 843 F.2d at 1052-53; *see also Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007) (noting that sanctions may include censure for conduct unbecoming of bar). We might not be so willing to overlook whatever future inconvenience we would have to endure if we are called, once again, to address this matter, which should have ended long ago. *See Bacon*, 795 F.2d at 34.

## III. CONCLUSION

We AFFIRM the district court's confirmation of Prostyakov's arbitral award, but DENY Prostyakov's motion for sanctions. An award of attorneys' fees and costs is unnecessary because Masco already has agreed to reimburse Prostyakov for his fees and costs.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*