[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12519

Non-Argument Calendar

_____

HIDROELECTRICA SANTA RITA S.A.,
a Guatemalan company,

Petitioner-Appellee,

*versus*

CORPORACION AIC, SA,
a Guatemalan company,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23807-RNS

_____

Before WILSON, LUCK, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Corporación AIC, S.A. ("AICSA") appeals the District Court's order granting the petition of Hidroeléctrica Santa Rita S.A. ("HSR") to confirm and enforce an arbitration award. After careful review, we affirm the District Court's order.

## I. Background

AICSA and HSR are companies incorporated under the laws of Guatemala. HSR engaged AICSA for the full turnkey, design, engineering, procurement, construction, start-up, and commissioning of a new hydroelectric power plant. The power plant would be located on the Icbolay River in Cobán, a municipality in Guatemala. To govern their transaction and outline their obligations, AICSA and HSR entered into the Engineering, Procurement, and Construction Agreement (the "EPC Contract"). The EPC Contract requires disputes between the parties to be resolved through arbitration.

The local indigenous community did not support the construction of the power plant. Members of the community blocked access to the construction site and threatened those working on it. Citing force majeure, HSR issued a notice to AICSA to suspend work under the EPC Contract. And HSR later issued a notice of termination for convenience of the EPC Contract.

HSR initiated arbitration proceedings under the EPC Contract to resolve several disputes arising from the project's termination. HSR sought payment from AICSA of advance payments, damages, fees, and expenses. AICSA in turn sought a dismissal of HSR's claims, and payments from HSR relating to damages, costs, payments to its subcontractor, fees, and expenses. Moreover, AICSA requested the joinder of a third party, Novacom, S.A. ("Novacom"), to the arbitration proceedings. AICSA had subcontracted Novacom to perform work on the power plant, and the termination of work under the EPC Contract negatively affected Novacom. Novacom sought a declaration that it was entitled to monies advanced to it by HSR and AICSA as well as payment from HSR of certain damages.

The parties submitted briefs to the arbitral tribunal (the "Tribunal") to resolve their disputes. In its first ruling, the Tribunal concluded Novacom could not join the arbitration. In the Final Award, the Tribunal held that AICSA is entitled to retain $2,429,627.08 and €703,290.00 for work completed pursuant to the EPC Contract. AICSA, however, was required to return to HSR $7,017,231.52 and €435,168.00, plus interest. And, pertinent to this appeal, the Tribunal dismissed AICSA's claims that HSR breached the EPC Contract due to HSR's alleged engagement in bribery schemes.

The Tribunal further issued a "Decision and Addendum" in response to applications by AICSA and HSR to correct and interpret the Final Award. In this Decision and Addendum, the Tribunal

clarified its mandate in the Final Award that AICSA "keep the Advance Payment Bonds in place." The Bonds were required by the EPC Contract to secure HSR's advance payments to AICSA. But because the issuers of the Bonds considered them to have expired, HSR claimed that AICSA breached the Final Award by refusing to procure new Bonds as security for HSR's advance payments. The Tribunal clarified the Final Award's injunction that AICSA "keep in place" the Bonds as meaning AICSA must provide new bonds should any issuer consider the original Bonds to have lapsed.

Dissatisfied with the Tribunal's decision, AICSA initiated an action in the District Court seeking to vacate the arbitral award on the basis that the Tribunal had exceeded its powers. *Corporacion AIC, S.A. v. Hidroelectrica Santa Rita S.A.*, No. 19-20294-CIV, 2020 WL 4478424, at *1 (S.D. Fla. Aug. 4, 2020). The District Court denied the petition and motion to vacate because Eleventh Circuit precedent foreclosed AICSA's claim that a party to an arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") could challenge an arbitration panel's decision on the exceeding powers ground delineated in § 10(a)(4) of the Federal Arbitration Act (the "FAA"). *Id.* at *1–2; *see* 9 U.S.C. § 10(a)(4). A panel of this Court, constrained by Eleventh Circuit precedent, affirmed the District Court's determination. *Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.* (*Hidroelectrica I*), 34 F.4th 1290, 1292 (11th Cir. 2022). But we granted AICSA's petition for an en banc rehearing and then reversed the District Court, holding that in a New York Convention case where the arbitration seat is in the United States, or where United States

23-12519                Opinion of the Court                5

law governs the arbitration conduct, Chapter 1 of the FAA provides the grounds for vacatur of the arbitral award. *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.* (*Hidroelectrica II*), 66 F.4th 876, 890 (11th Cir. 2023). We then vacated the District Court's judgment and remanded the action to the District Court to determine whether the Tribunal's award should be vacated under the exceeding powers ground of § 10(a)(4) of the FAA. *Id.*

Finally reaching the merits of AICSA's claim that the Tribunal exceeded its powers, the District Court granted HSR's petition to confirm the arbitral award. AICSA timely appealed, and we now must determine whether the Tribunal exceeded its powers.

## II. Standard of Review

"We review the denial of a motion to vacate and the confirmation of international arbitration awards *de novo*." *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 78 F.4th 1252, 1261 (11th Cir. 2023) (first citing *Técnicas Reunidas de Talara S.A.C. v. SSK Ingeniería y Construcción S.A.C.*, 40 F.4th 1339, 1343 (11th Cir. 2022); and then citing *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998)). "[W]e accept the district court's findings of fact to the extent they are not clearly erroneous." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998), *overruled in part on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396 (2008). "As a general rule, our review of an arbitration decision itself is extremely limited, 'among the narrowest known to the law,' for the very reason that arbitration is not litigation." *Hidroelectrica I*, 34 F.4th at 1293

(quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)).

### III. Discussion

The New York Convention is an international treaty which the United States acceded to in 1970, the purpose of which is to "encourage the recognition and enforcement of international arbitral awards to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less costly than litigation." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998) (alteration in original) (internal citations and quotation marks omitted). Congress implemented the New York Convention through Chapter 2 of the FAA. *See* 9 U.S.C. § 201 *et seq.* Chapter 1 of the FAA applies to and usually governs domestic arbitrations. *Indust. Risk*, 141 F.3d at 1439–40. But § 208 of the FAA provides that "Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that chapter is not in conflict with [Chapter 2] or the [New York] Convention as ratified by the United States." 9 U.S.C. § 208. Domestic law—Chapter 1 of the FAA—thus acts as a gap-filler and provides the vacatur grounds for an international arbitration award otherwise governed by Chapter 2. *Hidroelectrica II*, 66 F.4th at 886; *see* 9 U.S.C. § 10.

One of the grounds for vacating an arbitral award in Chapter 1 of the FAA is "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 USC §

23-12519                Opinion of the Court                7

10(a)(4). But "few awards are vacated because the scope of the arbitrator's authority is so broad." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016) (citing *Bakery, Confectionery & Tobacco Workers Loc. Union No. 362–T, AFL–CIO–CLC v. Brown & Williamson Tobacco Corp.*, 971 F.2d 652, 655 (11th Cir. 1992)). Parties to an arbitration dispute bargained for the arbitrator's interpretation of contractual language, and courts do not usurp that function. *See Am. Fed'n of State, Cnty. & Mun. Emps., Loc. Lodge No. 1803 v. Walker Cnty. Med. Ctr.*, 715 F.2d 1517, 1518–19 (11th Cir. 1983).

Consequently, "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 2068 (2013) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 466 (2000)). A court may overturn an arbitral determination when it reflects the arbitrator's "'own notions of [economic] justice' rather than 'draw[ing] its essence from the contract.'" *Id.* (alteration in original) (quoting *E. Associated Coal Corp.*, 531 U.S. at 62, 121 S. Ct. at 466).

Accordingly, "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068. This is a "high hurdle" because it is not enough to show that the arbitral authority committed even a serious error. *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct.

1758, 1767 (2010). Instead, a determination that the arbitrator interpreted the parties' contract will end our inquiry. *See Wiregrass*, 837 F.3d at 1088.

AICSA contends that the Tribunal exceeded its authority in three ways. First, the Tribunal required AICSA to maintain the Advance Payment Bonds or, if those Bonds had expired, to obtain new ones. Second, the Tribunal denied AICSA's claim that HSR breached the EPC Contract's anti-corruption provisions. Third, the Tribunal refused to join the subcontractor Novacom to the arbitration. We address each of AICSA's contentions in turn.

*A.*

AICSA first contends that the Tribunal exceeded its authority by determining that the EPC Contract requires AICSA to furnish new bonds if the Advance Placement Bonds have lapsed.

The EPC Contract required AICSA to furnish the Bonds to secure any obligations regarding the advance payments it received from HSR. If the EPC Contract terminated, the agreement provided that "all of the security provided by either Party, including the letters of the credit and the bonds, shall remain in full force and effect until the beneficiary of any such security determines . . . that all claims and potential claims are fully and finally settled and satisfied." A dispute concerning HSR's payments to AICSA arose when the EPC Contract terminated, resulting in the arbitration at issue. When the Tribunal issued its Final Award in the arbitration, it ordered AICSA to "keep the Advance Payment Bonds in place" through AICSA's full payment of the amounts owed to HSR. The

23-12519                Opinion of the Court                9

Tribunal clarified in its Decision and Addendum that this meant providing new bonds if the original Bonds lapsed.

We agree with the District Court that the Tribunal's decision did not "lack[] *any* contractual basis." *S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013) (quoting *Sutter*, 569 U.S. at 571, 133 S. Ct. at 2069). The Tribunal considered the language in the EPC Contract requiring the Bonds to "remain in full force and effect" until the settlement of all claims as meaning that AICSA must "keep in place" the security covering any to-be-returned advance payments and associated fees, costs, and interest. AICSA contested that its mandate to "keep in place" the Bonds would require a new bond issuance, but the Tribunal referred to the Oxford Live Dictionary and Merriam Webster to demonstrate that the phrase encompasses an obligation to renew the Bonds if they were to lapse. Indeed, the Tribunal explained it chose this language to track the contractual language of the EPC Contract. The Tribunal at each step based its ruling in an interpretation of the EPC Contract's language.

Even if the Tribunal erred in its analysis of the contractual language, it makes no difference to our review as long as the Tribunal construed and applied the underlying contract. *See Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068 (citing *E. Associated Coal Corp.*, 531 U.S. at 62, 121 S. Ct. at 466). The Tribunal's explanations evidence that it engaged with the contract's language, thereby sticking to "[its] delegated task of interpreting a contract" and acting within the bounds of its authority. *Id.* at 572, 133 S. Ct. at 2070.

Accordingly, the Tribunal did not exceed its authority in ruling that the EPC Contract requires AICSA to furnish new bonds if the Advance Placement Bonds have lapsed.

*B.*

AICSA next contends that the Tribunal exceeded its authority by denying AICSA's claim that HSR breached the EPC Contract's anti-corruption provisions.

The EPC Contract states that AICSA and HSR would comply with the Foreign Corrupt Practices Act (the "FCPA").[1]  While completing the EPC Contract, HSR donated roughly $50,000 in roofing materials to the local Guatemalan community.  HSR acknowledged that it paid for the materials at the behest of the local governor, but denied any illicit purpose in contravention of its contractual obligations.  AICSA claimed in arbitration that this payment constituted bribery in violation of the FCPA and thus amounted to a breach of the EPC Contract.  The Tribunal's ruling denied AICSA's claim on two relevant grounds: lack of jurisdiction and lack of evidence.

---

[1] As relevant to AICSA's claim in arbitration, the FCPA provides that it is unlawful to make "an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value" to any foreign official to assist in obtaining or retaining business.  15 U.S.C. § 78dd-2(a).  The FCPA also imposes certain accounting requirements relating to transactions and asset dispositions.  *See id*. § 78m.

23-12519                 Opinion of the Court                 11

We agree with the District Court that the Tribunal's decision was grounded in the terms of the EPC Contract and therefore was not in excess of its authority. The Tribunal accepted the contention that the EPC Contract required the parties to comply with the FCPA and that a breach of the FCPA would constitute a breach of the EPC Contract, but determined it could only exercise jurisdiction to find a breach of the FCPA if that statute created a private right of action. If not, the Tribunal would be unable determine if HSR's conduct amounted to a breach of the EPC Contract. Analyzing the text and structure of the FCPA, the Tribunal found that the FCPA did not create such a right of action. The Tribunal's interpretation of the FCPA may be legally erroneous to AICSA, but our review under § 10(a)(4) does not allow us to "sit to hear claims of . . . legal error by an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 370 (1987). The Tribunal interpreted the EPC Contract's incorporation of the FCPA as the parties' standard for contractual breach by asking whether it could conclude that a breach of the FCPA had occurred; whether the results of its interpretation were right or (seriously) erroneous does not bear on AICSA's request for a vacatur of the Tribunal's award. *See Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068; *Stolt-Nielson*, 559 U.S. at 671, 130 S. Ct. at 1767.

Moreover, we cannot disturb the Tribunal's finding of fact that insufficient evidence supported AICSA's claim. Our authority to review arbitration awards under Chapter 1 of the FAA manifests a national policy favoring arbitration with limited review, such that we do not engage in "full-bore legal and evidentiary appeals that

can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010) (quoting *Hall St. Assocs.*, 552 U.S. at 588, 128 S. Ct. at 1405). AICSA effectively seeks to overturn the Tribunal's finding that insufficient evidence of bribery supports AICSA's claim, but "[a] traditional merits appeal is not available" to "a party [that] has second thoughts after learning the outcome (as the loser usually does)." *Gherardi v. Citigroup Glob. Markets Inc.*, 975 F.3d 1232, 1238 (11th Cir. 2020) (citing *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006)). The EPC Contract assigns any claims of breach of the agreement to arbitration, and the arbitrating Tribunal could not exceed its authority by making findings of fact that foreclose AICSA's claim. *See id.* "[A] court may not reject those findings simply because it disagrees with them." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371.

The Tribunal consequently did not exceed its authority by ruling that HSR did not breach the anti-corruption provisions of the EPC Contract.

## C.

Finally, AICSA claims that the Tribunal exceeded its authority by refusing to join Novacom, AICSA's subcontractor, to the proceedings.

When HSR provided advance payments to AICSA, a portion of those payments was transmitted to Novacom pursuant to a separate contract between AICSA and Novacom. And when HSR provided notices of suspension and termination to AICSA under the

EPC Contract, AICSA issued parallel notices to Novacom. Consequently, Novacom brought claims against HSR and AICSA seeking damages and various declarations. But the Tribunal, investigating both contracts and Article 7 of the International Chamber of Commerce Rules, concluded that no mechanism permitted the joinder of Novacom to the arbitration between AICSA and HSR.

We agree with the District Court that the Tribunal's decision to deny Novacom's joinder did not exceed its authority because the Tribunal arguably interpreted the parties' contract.[2] *See Wiregrass*, 837 F.3d at 1088. The EPC Contract states that "[i]f the Dispute involves or relates to any [third party] . . . either Owner or Contractor may include such [third party] . . . as a party to the Arbitration between Owner and Contractor." The Tribunal parsed the language of this provision to find that the EPC Contract defines "Arbitration" according to the "Dispute" for which arbitration is commenced. A "Dispute" arises from claims asserted by either "Owner" (HSR) or "Contractor" (AICSA). The Tribunal interpreted this contractual language as manifesting an agreement between AICSA and HSR that each has a right to join a third party when arbitrating a claim asserted *by HSR or AICSA*, but not an

---

[2] The Tribunal also addressed arguments that Novacom's joinder was permissible pursuant to the contract between AICSA and Novacom, Guatemalan law, and the Rules of the International Chamber of Commerce. Because AICSA in its appeal only raises the issue of the Tribunal's interpretation of the EPC Contract, we limit our analysis to that portion of the Tribunal's ruling. *See A1A Burrito Works, Inc. v. Sysco Jacksonville, Inc.*, 87 F.4th 1280, 1290–91 (11th Cir. 2023).

agreement to allow arbitration of a claim asserted *by a third party against HSR or AICSA*. The close parsing of the EPC Contract's language demonstrates that the Tribunal's decision resulted from its construction of the relevant contractual sections and not from its "own notions of [economic] justice." *Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068 (alteration in original) (quoting *E. Associated Coal Corp.*, 531 U.S. at 62, 121 S. Ct. at 466).

The Tribunal's interpretation of the EPC Contract to disallow the joinder of Novacom under these circumstances was not in excess of its authority precisely because it was an interpretation based in the contract. AICSA contends that the Tribunal's interpretation was a misreading of the contract that effectively nullified that contract term, but the Tribunal explained exactly how it derived its ruling from the contractual language. Even if we were to accept that this interpretation is a misreading of the contract, "a court should not reject an award on the ground that the arbitrator misread the contract." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371 (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S. Ct. 1358, 1362 (1960)). That is because an arbitrator does not exceed his power when he makes errors. *Gherardi*, 975 F.3d at 1237 (citing *Stolt-Nielson*, 559 U.S. at 671, 130 S. Ct. at 1767). To vacate an arbitral award on the merits of the arbitrator's contract interpretation would make meaningless the parties' bargained-for provisions establishing the finality of the arbitrator's interpretation. *Enter. Wheel*, 363 U.S. at 599, 80 S. Ct. at 1362. And although AICSA disagrees, the Tribunal *did* interpret the contract.

23-12519               Opinion of the Court                    15

Accordingly, the Tribunal did not exceed its authority in concluding that the EPC Contract did not permit Novacom to join the arbitration to assert its own claims.

### IV. Conclusion

Under the highly deferential standard of § 10(a)(4), the Tribunal did not exceed its authority. For the foregoing reasons, we affirm the judgment of the District Court.

**AFFIRMED.**